[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-13306

_____

D.C. Docket No. 2:10-cv-00180-LGW-JEG

ALBERT WILLIAMS,

Petitioner - Appellant,

versus

WARDEN,
FEDERAL BUREAU OF PRISONS,

Respondents - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(April 11, 2013)

Before MARCUS and MARTIN, Circuit Judges, and GOLD,[*] District Judge.

MARCUS, Circuit Judge:

_____

[*] Honorable Alan S. Gold, United States District Judge for the Southern District of Florida, sitting by designation.

Albert Williams appeals the dismissal of his 28 U.S.C. § 2241 petition for habeas corpus, claiming that his 293-month sentence for a violation of 18 U.S.C. § 922(g)(1) and the Armed Career Criminal Act of 1984 ("ACCA"), 18 U.S.C. § 924(e), was improper because he did not have the three violent felony predicates required to apply the ACCA enhancement. Without that enhancement, a § 922(g)(1) offense carries a ten-year maximum sentence. At issue is whether the savings clause of 28 U.S.C. § 2255(e) allowed the district court to entertain Williams's § 2241 petition and, if it did, whether Williams's 1989 and 1990 burglary convictions are proper ACCA predicates.

Notwithstanding the bar on second or successive § 2255 motions, § 2255's savings clause permits a court to entertain a § 2241 habeas petition challenging the legality of a prisoner's detention when the prisoner's "remedy by [§ 2255] motion is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). At the time of Williams's direct appeal and first § 2255 motion, there was no circuit precedent that foreclosed him from raising the claim that his burglary convictions should not count as violent felonies, and in fact he did raise it. In these circumstances, his direct appeal and first collateral attack were not inadequate or ineffective to test the legality of his detention, and the savings clause does not apply. We conclude that the district court lacked subject-matter jurisdiction to entertain Williams's § 2241 petition and, therefore, affirm.

2

I.

Williams has an extensive criminal history, of which four incidents are relevant to this appeal. In 1986, he pleaded guilty to one count of robbery and two counts of aggravated assault stemming from a single incident. In 1989, he pleaded nolo contendere to burglary of a dwelling, a second-degree felony pursuant to Fla. Stat. § 810.02. In 1990, he again committed burglary of a dwelling; this time, he pleaded guilty to the offense.

Finally, the criminal offense that led to the sentence now before us occurred in 1997, when Miami police officers investigating suspected narcotics activity encountered Williams. After a brief conversation, Williams drew a gun on the officers, who disarmed him.

Williams was indicted in the U.S. District Court for the Southern District of Florida for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Before trial, the government filed a notice of intent to seek the penalty enhancement authorized by the Armed Career Criminal Act, which imposes a minimum sentence of fifteen years and a maximum of life imprisonment for a violation of § 922(g)(1) by a person who has three prior convictions for a violent felony or a serious drug offense. Williams was tried and convicted of the § 922(g)(1) offense in 1998.

3

Williams's Presentence Investigation Report ("PSR") recommended applying the ACCA enhancement based on his robbery and burglary convictions. Applying this enhancement, the PSR determined that Williams had an offense level of 33 and a criminal history category of VI. Under the then-mandatory Sentencing Guidelines, his guideline range was 235 to 293 months. During his sentencing, Williams did not object to the ACCA enhancement based on the theory that his prior offenses did not qualify as violent felonies. He received a prison sentence of 293 months. On direct appeal, he also did not raise an objection to the ACCA enhancement. This Court affirmed Williams's conviction and sentence. United States v. Williams, 182 F.3d 936 (11th Cir. 1999) (unpublished table op.).

Several failed collateral attacks followed. Williams first sought postconviction relief pursuant to 28 U.S.C. § 2255, arguing that he received ineffective assistance of counsel because his attorney had failed to object to the use of Williams's burglary convictions as predicate offenses to support the ACCA enhancement. He also argued that the Florida crime of burglary of a dwelling fell outside the definition of violent felony because it encompassed conduct beyond "generic burglary" as the Supreme Court had defined it in Taylor v. United States, 495 U.S. 575 (1990). The postconviction court denied Williams relief and a certificate of appealability ("COA"). This Court also denied him a COA and denied his motion for reconsideration on March 23, 2004, noting that the use of the

4

"1989 burglary conviction . . . was arguably erroneous under Taylor," but concluding that any possible error was immaterial because Williams's other prior convictions could support the enhancement. The Supreme Court denied certiorari. Williams v. United States, 543 U.S. 864 (2004).

After the Supreme Court decided Shepard v. United States, 544 U.S. 13 (2005), which limited the materials a district court could consult to determine whether a prior conviction was a violent felony under the ACCA, Williams twice unsuccessfully sought Rule 60(b) relief from the denial of his § 2255 motion. In both instances, the district court concluded that it lacked subject-matter jurisdiction to entertain Williams's claim -- which asserted, through the lens of ineffective assistance of counsel, that his Fla. Stat. § 810.02 burglary convictions were not violent felonies in light of Taylor and Shepard -- because Williams was effectively seeking a second § 2255 motion. Williams then filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the U.S. District Court for the Eastern District of North Carolina. That petition, which reiterated his Taylor and Shepard claims, was also unsuccessful.

After the Supreme Court decided Begay v. United States, 553 U.S. 137 (2008), Williams filed still another § 2255 motion. Williams argued that, under Begay, his burglary offenses did not qualify as violent felonies, and that therefore his sentence exceeded the ten-year statutory maximum for his crime of conviction.

5

The district court concluded that it could not entertain this second or successive motion because Williams had not moved this Court for authorization pursuant to 28 U.S.C. §§ 2255(h) and 2244(b)(3)(A), which deprived it of subject-matter jurisdiction. Williams did not appeal this decision.

In November 2010, Williams again collaterally attacked his sentence, filing the instant § 2241 petition in the U.S. District Court for the Southern District of Georgia. Williams contended that, pursuant to the savings clause of § 2255(e), the district court could hear his § 2241 petition and hence decide the Begay claim that he had raised in his second § 2255 motion.

The district court, relying on our en banc decision in United States v. Gilbert, 640 F.3d 1293 (11th Cir. 2011), dismissed Williams's petition because it interpreted Gilbert as holding that the savings clause does not authorize any challenge to a prisoner's sentence, only challenges based on actual innocence. Williams timely appealed, and this Court appointed him counsel.

The government initially conceded both before the district court and on appeal that the savings clause applied to the kind of claim Williams sought to bring in his § 2241 petition. Nonetheless, at oral argument we asked the parties to brief whether the district court had subject-matter jurisdiction to entertain his petition pursuant to the savings clause. See Wofford v. Scott, 177 F.3d 1236, 1245 (11th Cir. 1999) ("[T]he only sentencing claims that may conceivably be covered by the

6

savings clause are those based upon a retroactively applicable Supreme Court decision overturning circuit precedent."). Williams asserted that the savings clause issue was nonjurisdictional and thus we should accept the government's initial concession and go to the merits of his claim. Moreover, he said, this Court's ACCA precedents -- while not specifically addressing the issue of whether Florida burglary of a dwelling was a violent felony -- did foreclose his sentencing claim prior to Begay. In response, the government argued that Williams failed to satisfy Wofford's requirement that his claim be based upon a retroactively applicable Supreme Court decision overturning circuit precedent. The government said that there was no controlling circuit precedent that foreclosed Williams's claim during his direct appeal and that, in any case, none of the Supreme Court's subsequent ACCA decisions cast doubt on whether Fla. Stat. § 810.02 is a violent felony. Thus, the savings clause did not permit Williams's § 2241 petition.

## II.

Whether a prisoner may bring a 28 U.S.C. § 2241 petition under the savings clause of § 2255(e) is a question of law we review de novo. Sawyer v. Holder, 326 F.3d 1363, 1365 n.4 (11th Cir. 2003). The applicability of the savings clause is a threshold jurisdictional issue, and we "cannot reach . . . questions" that "the district court never had jurisdiction to entertain." Boone v. Sec'y, Dep't of Corr., 377 F.3d 1315, 1316 (11th Cir. 2004). If the savings clause does permit Williams's § 2241

petition, the substantive issue -- whether his prior convictions qualify as violent felonies under the Armed Career Criminal Act -- is also a question of law we review de novo. United States v. Canty, 570 F.3d 1251, 1254 (11th Cir. 2009).

A.

Williams contends that the savings clause of § 2255(e) permits him to file a § 2241 habeas petition to raise the claim that his sentence exceeds the statutory maximum authorized by 18 U.S.C. § 924. He argues, at bottom, that the Supreme Court's recent run of ACCA cases, most notably Begay v. United States, 553 U.S. 137 (2008), should lead us to conclude that his 1989 and 1990 burglary convictions are not violent felonies. Begay held that the ACCA's residual clause should encompass only those "crimes that are roughly similar, in kind as well as in degree of risk posed, to the [enumerated crimes] themselves." Id. at 143. To test whether a state offense satisfies these conditions, a court must determine whether the crime involves "purposeful, violent, and aggressive conduct." Id. at 144-45 (internal quotation marks omitted). According to Williams, his 1989 and 1990 burglary convictions posed a lesser degree of risk than the ACCA's enumerated crimes because the Florida statute encompassed conduct analogous to mere criminal trespass. Therefore, Williams avers, he was not properly subject to the ACCA enhancement that led to a sentence in excess of the otherwise applicable ten-year statutory maximum.

8

But Williams has already challenged the characterization of his burglary convictions as violent felonies under the ACCA, and hence the application of the ACCA enhancement to his sentence. He cannot raise this claim again in a second or successive § 2255 motion. Section 2255's savings clause dictates the narrow circumstances in which the district court could have heard and decided Williams's claim:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

28 U.S.C. § 2255(e) (emphasis added). Thus, in order for the savings clause to apply, Williams must demonstrate that his direct appeal and first § 2255 motion were "inadequate or ineffective" tests of his claim.

Before we consider that question, however, we must determine whether the savings clause is a jurisdictional provision. As the Federal Rules of Civil Procedure state, "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); accord Gonzalez v. Thaler, 132 S. Ct. 641, 648 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider sua sponte issues that the parties have disclaimed or have not presented."); id. ("Subject-matter jurisdiction can never be

9

waived or forfeited."). This threshold question is particularly important because the government conceded in the district court, and initially on appeal, that the savings clause applies to Williams's claim. If the savings clause is not jurisdictional, then we may proceed directly to the merits on the basis of this concession; however, we cannot accept this concession if the savings clause limits the district court's subject-matter jurisdiction to entertain a § 2241 petition. See W. Peninsular Title Co. v. Palm Beach Cnty., 41 F.3d 1490, 1492 n.4 (11th Cir. 1995) ("Parties may not stipulate jurisdiction."). After thorough review, we hold that the savings clause does indeed impose a subject-matter jurisdictional limit on § 2241 petitions. Given the importance of the issue and the relative dearth of authority, we explain this holding at some length.

The Supreme Court recently has taken an active role in more precisely delineating what statutory prerequisites to suit qualify as jurisdictional -- a boundary not always neatly policed in the past. See Arbaugh v. Y & H Corp., 546 U.S. 500, 510 (2006) ("This Court, no less than other courts, has sometimes been profligate in its use of the term ['jurisdictional']."). In Arbaugh, the Court established that a requirement for bringing suit is jurisdictional "[i]f the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional," and, conversely, that "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as

nonjurisdictional in character." Id. at 515-16. Thus, whether a statutory limitation is jurisdictional is essentially based on whether there is a clear expression of congressional intent to make it so.

In this case, Congress expressed its clear intent to impose a jurisdictional limitation on a federal court's ability to grant a habeas petitioner what is effectively a third bite at the apple after failing to obtain relief on direct appeal or in his first postconviction proceeding. The savings clause states that a § 2241 habeas petition "shall not be entertained . . . unless it . . . appears that the remedy by motion is inadequate or ineffective to test the legality of his detention." § 2255(e) (emphasis added). Based on the text alone, which speaks in imperative terms of what class of cases the district court has the power to hear, not what the petitioner himself must allege or prove in order to state a claim, we are compelled to conclude that the savings clause is a limitation on jurisdiction. It commands the district court not to "entertain[]" a § 2241 petition that raises a claim ordinarily cognizable in the petitioner's first § 2255 motion except in the exceptional circumstance where the petitioner's first motion was "inadequate" or "ineffective" to test his claim. The provision does everything but use the term "jurisdiction" itself, and there is no magic in that word that renders its use necessary for courts to find a statutory limitation jurisdictional in nature. See Henderson ex rel. Henderson v. Shinseki, 131 S. Ct. 1197, 1203 (2011) ("Congress, of course, need not use magic words in

11

order to speak clearly on this point."); Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (holding to be jurisdictional 28 U.S.C. § 2253(c)(1), which provides "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals"). As we have explained before, "[a] jurisdictional defect is one that strips the court of its power to act and makes its judgment void." McCoy v. United States, 266 F.3d 1245, 1249 (11th Cir. 2001) (internal quotation marks and alterations omitted); accord Henderson, 131 S. Ct. at 1202 ("[A] rule should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity . . . ."). A plain reading of the phrase "shall not entertain" yields the conclusion that Congress intended to, and unambiguously did strip the district court of the power to act -- that is, Congress stripped the court of subject-matter jurisdiction -- in these circumstances unless the savings clause applies.

Indeed, when we read the provision in its broader context, the savings clause's limitation on § 2241 jurisdiction complements another jurisdictional limitation designed to promote finality of federal criminal judgments. In general, a federal prisoner seeking to challenge the legality of his conviction or sentence has two bites at the apple: one on direct appeal, and one via a § 2255 motion. In the interests of finality, the law generally bars prisoners from filing second or successive § 2255 motions, except when "certified as provided in section

2244[(b)(3)(A)] by a panel of the appropriate court of appeals to contain" either "newly discovered evidence" of actual innocence or "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." See 28 U.S.C. § 2255(h); Gilbert, 640 F.3d at 1309. This bar on second or successive motions is jurisdictional. See United States v. Holt, 417 F.3d 1172, 1175 (11th Cir. 2005) ("Without authorization, the district court lacks jurisdiction to consider a second or successive petition." (citing Farris v. United States, 333 F.3d 1211, 1216 (11th Cir. 2003)). It would make little sense for that provision to be jurisdictional in nature but for the savings clause to be nonjurisdictional, since both the savings clause and the certification of second motions pursuant to §§ 2255(h) and 2244(b)(3)(A) are designed to give prisoners a limited opportunity to mount a second postconviction challenge that Congress has otherwise denied them through the statutory bar on second or successive motions.

A comparison of the savings clause to the provisions at issue in Arbaugh and Miller-El confirms the jurisdictional nature of the savings clause. In Arbaugh, the Supreme Court addressed whether Title VII's definition of the term "employer," which required the defendant to have "fifteen or more employees," see 42 U.S.C. § 2000e(b), established a jurisdictional requirement or was merely a part of a plaintiff's substantive claim. 546 U.S. at 503. Notably, this definition was part of a section titled "Definitions," 42 U.S.C. § 2000e, which never referred to a court's

13

ability to entertain a claim but merely defined terms used in the rest of the statute. Jurisdiction over Title VII actions existed under a distinct provision, 42 U.S.C. § 2000e-5(f)(3), and under the general federal-question jurisdiction of 28 U.S.C. § 1331. See Arbaugh, 546 U.S. at 505-06. Given this statutory scheme, the Court had little difficulty concluding that "the threshold number of employees . . . is an element of a plaintiff's claim for relief, not a jurisdictional issue." Id. at 516. A clear statement regarding a court's power to hear a Title VII action was decidedly lacking in that provision.

In Miller-El, on the other hand, the Court held that the COA requirement of 28 U.S.C. § 2253(c)(1) did establish a subject-matter jurisdictional limit. See 537 U.S. at 335-36 ("Before an appeal may be entertained, a prisoner who was denied habeas relief in the district court must first seek and obtain a COA . . . . This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" (alterations in original) (quoting § 2253(c)(1)); see also Gonzalez, 132 S. Ct. at 649 (characterizing § 2253(c)(1) as "'clear' jurisdictional language"). The savings clause, unlike the definition of employer at issue in Arbaugh, is housed in a section of the statute that concerns jurisdiction and is framed in jurisdictional language. Moreover, just like § 2253(c)(1), § 2255(e)

14

speaks in imperative terms regarding a district court's power to entertain a particular kind of claim.

Although the courts of appeals have not addressed this issue at length, the great weight of authority also suggests that the savings clause is jurisdictional in nature. In a Fourth Circuit case, for example, the government failed to contest the savings clause's applicability in the district court, then raised the issue for the first time on appeal. See Rice v. Rivera, 617 F.3d 802, 806 (4th Cir. 2010). The Fourth Circuit described this change-of-heart as a "distasteful occurrence[]" but explained that the government's "about-face [wa]s irrelevant to [its] resolution of" what that court termed a "jurisdictional issue." Id. at 806-07; accord id. at 807 ("Every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review." (alteration and internal quotation marks omitted)). Thus, the Fourth Circuit considered the savings clause issue and ultimately held that the district court lacked jurisdiction over Rice's § 2241 petition because he failed to satisfy the conditions needed to render his § 2255 motion inadequate or ineffective to test the legality of his detention. See id. at 807-08. Several other courts of appeals have taken this position, or implied that the savings clause is jurisdictional in nature. See Wooten v. Cauley, 677 F.3d 303, 306 (6th Cir. 2012) (analyzing whether "[t]he use of the savings clause to establish jurisdiction" renders the resulting § 2241 petition

15

subject to § 2255's statute of limitations); Harrison v. Ollison, 519 F.3d 952, 961 (9th Cir. 2008) ("Because Harrison has not established that his petition is a legitimate § 2241 petition brought pursuant to the escape hatch of § 2255, we do not have jurisdiction under § 2241 to hear his appeal."); Hill v. Morrison, 349 F.3d 1089, 1091 (8th Cir. 2003) (the savings clause "provides the court of incarceration as having subject matter jurisdiction over a collateral attack on a conviction or sentence"); Cephas v. Nash, 328 F.3d 98, 105 (2d Cir. 2003) ("[W]here . . . petitioner invokes § 2241 jurisdiction to raise claims that clearly could have been pursued earlier . . . then the savings clause of § 2255 is not triggered and dismissal of the § 2241 petition for lack of jurisdiction is warranted."); Garza v. Lappin, 253 F.3d 918, 921 (7th Cir. 2001) ("If Garza can show that his petition fits under this narrow exception [in the savings clause], then . . . the district court had jurisdiction to consider his habeas petition . . . .").[1]

In short, in enacting § 2255(e), Congress clearly restricted the subject-matter jurisdiction of the federal courts.

## B.

The remaining issue boils down to whether Williams has demonstrated that his claim is the kind of claim covered by the savings clause's limited grant of

---

[1] Williams cites as contrary authority a Seventh Circuit case, Brown v. Rios, 696 F.3d 638 (7th Cir. 2012). In Brown, however, the Seventh Circuit simply accepted the government's concession that the savings clause applied, see 696 F.3d at 641, and never considered whether it was a jurisdictional limitation.

16

jurisdiction. On its surface, the provision allows prisoners to pursue claims through a § 2241 petition if their original § 2255 motion was "inadequate or ineffective to test the legality of [their] detention," 28 U.S.C. § 2255(e), but the statute says precious little about what it means for the original motion to have been "inadequate" or "ineffective." In two major cases, this Court has substantially limited the types of claims to which the savings clause applies: first in Wofford, 177 F.3d 1236, and most recently in our en banc decision in Gilbert, 640 F.3d 1293.

As an initial matter, the district court erred in relying on Gilbert to dismiss Williams's petition.[2] According to the district court, Gilbert held that "a petitioner is foreclosed from challenging his sentence, rather than his conviction, using 28 U.S.C. § 2255(e)'s savings clause." However, Gilbert never established so categorical a limitation on the savings clause. Rather, Gilbert addressed -- and explicitly limited its holding to -- circumstances where a federal prisoner sought to attack a potential misapplication of the Sentencing Guidelines that resulted in a higher sentence, but one that remained within the statutory maximum. See 640 F.3d at 1295 (framing the question as "whether a federal prisoner can use a habeas corpus petition to challenge his sentence" when "the sentence the prisoner is

---

[2] We can, however, "affirm the judgment of the district court on any ground supported by the record, regardless of whether that ground was relied upon or even considered by the district court," Kernel Records Oy v. Mosley, 694 F.3d 1294, 1309 (11th Cir. 2012), and ultimately do so here.

17

attacking does not exceed the statutory maximum"). We held that such challenges to guideline determinations do not fall within the ambit of the savings clause. Id. at 1323. In a footnote, Gilbert specifically limited its holding from applying to "pure Begay errors, by which we mean errors in the application of the 'violent felony' enhancement, as defined in 18 U.S.C. § 924(e)(2)(B), resulting in a higher statutory minimum and maximum sentence under § 924(e)." Id. at 1319 n.20. In Gilbert, "we ha[d] no occasion to decide" how to treat these pure Begay errors and held only that "the savings clause does not apply to sentencing errors that do not push the term of imprisonment beyond the statutory maximum." Id.; accord id. at 1323 ("Nor do we decide if the savings clause . . . would permit . . . a § 2241 petition claiming that [the prisoner] was sentenced to a term of imprisonment exceeding the statutory maximum."). Williams's claim is that the district court erroneously applied the ACCA enhancement, which increased his sentence to 293 months, well beyond the otherwise applicable ten-year statutory maximum. Since Gilbert expressly reserved the issue of whether the savings clause applied to this species of claim, the district court committed legal error by reading Gilbert as disposing of Williams's § 2241 petition.

In fact, it is not Gilbert, but rather our earlier savings clause decision in Wofford, that is fatal to Williams's attempt to pass through the savings clause. In Wofford, a prisoner sought and was denied § 2255 relief on a variety of claims; he

18

then sought permission to file a second § 2255 motion advancing several new challenges to his sentencing. See 177 F.3d at 1237-38. After several failed attempts at obtaining certification to file a second § 2255 motion, Wofford filed a petition for a writ of habeas corpus pursuant to § 2241, arguing that the savings clause allowed him to pursue his sentencing arguments because § 2255 foreclosed any other avenue for raising those claims. Id. at 1238.

To divine the meaning of the savings clause, the panel in Wofford canvassed the decisions of our sister circuits, several of which had permitted § 2241 petitions via the savings clause in the wake of the Supreme Court's decision in Bailey v. United States, 516 U.S. 137 (1995). See Wofford, 177 F.3d at 1242-45. In Bailey, the Supreme Court had restricted the meaning of a federal criminal statute, 18 U.S.C. § 924(c)(1), which meant that some prisoners, who were convicted under the broader interpretation of that statute, were then imprisoned for conduct the law no longer rendered criminal. See id. at 1242. By the time Wofford was decided, the Second, Third, and Seventh Circuits had all held that the savings clause permitted prisoners to claim actual innocence based on Bailey in a § 2241 petition, although each court relied on a different rationale. See id. at 1242-44. The panel in Wofford approved of the Seventh Circuit's approach in In re Davenport, 147 F.3d 605 (7th Cir. 1998), which held that when "a Supreme Court decision has changed the law of a circuit retroactively in such a way that a prisoner stands convicted for a

19

nonexistent offense, and the prisoner had no reasonable opportunity for a judicial remedy of that fundamental defect before filing the § 2241 proceeding," then the savings clause permitted the petition. See Wofford 177 F.3d at 1244 (citing In re Davenport, 147 F.3d at 611).

Wofford approved of the Davenport approach because it addressed and harmonized two serious concerns that are in some tension with one another. On the one hand, "the essential function of habeas corpus is to give a prisoner a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence," and it may be necessary to apply the savings clause to some claims inadequately addressed in a first § 2255 motion in order to "satisfy the Constitution['s Suspension Clause, U.S. Const. art. I, § 9, cl. 2.]" Id. (internal quotation marks omitted). On the other hand, letting the savings clause apply too broadly would eviscerate the statutory bar on second or successive motions, which was intended to limit most prisoners to one clean shot at postconviction relief. Id. (if "the § 2241 remedy is available whenever the AEDPA restrictions on second or successive motions bar a § 2255 motion," then that "would nullify the [bar's] limitations" (internal quotation marks omitted)). After all, the savings clause cannot simply mean that every § 2255 motion that appears to have been incorrectly decided based on subsequent Supreme Court precedent may be revisited through a § 2241 habeas petition; if it did, then the bar on second or

20

successive motions would effectively be written out of the statute, and the savings clause would swallow up the specific allowance for a second motion when the basis of the challenge is "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." See 28 U.S.C. § 2255(h)(2).[3] Yet by the same token, the circumstances delineated in § 2255(h)(1) and (2) cannot be the only instances in which the § 2255 remedy is inadequate; if that were true, then it would be the savings clause that was rendered meaningless. If possible, we try to avoid interpreting a statute in such a way that any part of it becomes mere surplusage. See United States v. Canals-Jimenez, 943 F.2d 1284, 1287 (11th Cir. 1991).

---

[3] As we see it, the dissent brushes aside this problem, claiming that "[t]he correct question to ask is whether Mr. Williams was erroneously sentenced as an armed career criminal in light of Begay," and that "[t]he existence or nonexistence of circuit precedent which conflicts with Begay" is meaningless. Dissenting Op. at 44. According to the dissent, when an intervening Supreme Court precedent reveals that a prisoner's sentence exceeds the statutory maximum, the prisoner's claim assumes a uniquely powerful constitutional dimension that means we must entertain it notwithstanding the statutory bar on second or successive motions. See Dissenting Op. at 38, 46-47.

The dissent's position, however, ignores the language and structure of 28 U.S.C. § 2255. The statute covers a whole host of claims, expressly including claims "that the sentence was in excess of the maximum authorized by law," id. § 2255(a), but nonetheless bars a second or successive motion advancing those claims unless they are based upon "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," id. § 2255(h)(2). There is not the slightest indication in the statutory text that the type of error Williams alleges -- a sentence in excess of the statutory maximum -- is or should be treated as warranting an exception to the bar on second or successive motions. Nonetheless, the dissent maintains that, at least for this kind of claim, all Williams needed was Begay itself -- a decision based on statutory interpretation of the ACCA rather than constitutional law, and one which the Court itself did not make retroactively applicable. In taking this position, the dissent effectively seeks to rewrite § 2255 to put one type of claim enumerated in § 2255(a) on a different footing from all the other claims the statute covers. We are obliged, however, to obey the language as Congress wrote it, and Congress applied the same bar on second or successive motions to all the claims enumerated in § 2255(a).

Drawing from <u>Davenport</u>, <u>Wofford</u> described two different kinds of challenges to which the savings clause applies that are <u>not</u> covered by § 2255(h). First, the panel opined in dicta that "[t]he savings clause of § 2255 applies to a claim when: 1) that claim is based upon a retroactively applicable Supreme Court decision; 2) the holding of that Supreme Court decision establishes the petitioner was convicted for a nonexistent offense; and, 3) circuit law squarely foreclosed such a claim at the time it otherwise should have been raised in the petitioner's trial, appeal, or first § 2255 motion." <u>Wofford</u>, 177 F.3d at 1244. This category covers actual innocence challenges akin to the post-<u>Bailey</u> § 2241 petitions permitted by several other courts of appeals; when a Supreme Court decision subsequent to conviction means that a petitioner's offense conduct is no longer criminal, the savings clause gives him an avenue to seek relief. Also in dicta, the panel in <u>Wofford</u> noted a second circumstance to which the savings clause might apply: when "a 'fundamental defect' in sentencing" occurred and "the petitioner had not had an opportunity to obtain judicial correction of that defect earlier." <u>Id.</u> (quoting <u>In re Davenport</u>, 147 F.3d at 611). This interpretation of the savings clause harmonizes that provision with the bar on second or successive motions while also avoiding constitutional questions under the Suspension Clause.

The panel in <u>Wofford</u> did not define what qualified as a fundamental defect. Rather, the panel said: "It is enough to hold, as we do, that the only sentencing

22

claims that may conceivably be covered by the savings clause are those based upon a retroactively applicable Supreme Court decision overturning circuit precedent." Id. at 1245. Because Wofford's sentencing claims did not "rest upon a circuit law-busting, retroactively applicable Supreme Court decision," and he had "had a procedural opportunity to raise each of his claims . . . at trial or on appeal," the panel in Wofford concluded that the savings clause could not apply to his claims. Id.

Wofford's holding establishes two necessary conditions -- although it does not go so far as holding them to be sufficient -- for a sentencing claim to pass muster under the savings clause. First, the claim must be based upon a retroactively applicable Supreme Court decision. The second, and equally essential, condition is that the Supreme Court decision must have overturned a circuit precedent that squarely resolved the claim so that the petitioner had no genuine opportunity to raise it at trial, on appeal, or in his first § 2255 motion. Wofford resolves the issue in this appeal because Williams cannot show that this Circuit's law foreclosed him from raising an objection to the treatment of his two Florida burglary convictions as violent felonies under the ACCA.[4]

---

[4] The dissent disagrees with our reading of Wofford. The dissent says that Williams's claim is not a sentencing claim, see Dissenting Op. at 39 n.2, and thus cannot fall within Wofford's holding that "the only sentencing claims that may conceivably be covered by the savings clause are those based upon a retroactively applicable Supreme Court decision overturning circuit precedent." 177 F.3d at 1245. The dissent also suggests that Wofford does not apply to these circumstances, and that we have mistaken its dicta for its holding. According to the dissent, the

23

No Eleventh Circuit precedent squarely held that burglary of a dwelling, as defined in Fla. Stat. § 810.02, was a violent felony for ACCA purposes during

_____

requirement of circuit-busting Supreme Court precedent "does not apply to someone serving a sentence beyond what the statute allows." Dissenting Op. at 39-40; accord id. at 43-44.

In the first place, we are hard-pressed to imagine a more quintessential sentencing claim than the one Williams has presented: that his 293-month sentence was the product of an erroneous application of the Armed Career Criminal Act, which is -- and which this Court has always treated as -- a "sentencing enhancement" statute. See, e.g., United States v. Robinson, 583 F.3d 1292, 1293 (11th Cir. 2009). The dissent even quotes language from our en banc opinion in Gilbert that makes this point abundantly clear. As we explained in Gilbert, if "pure Begay errors" fell within the savings clause, it would be because they were "sentencing claims . . . where there was a fundamental defect in sentencing." 640 F.3d at 1319 n.20 (emphasis added). Indeed, it is difficult to understand why Gilbert would bother to confine its holding to "sentencing errors that do not push the term of imprisonment beyond the statutory maximum," id., if all sentencing errors that pushed the term of imprisonment beyond the statutory maximum were not sentencing claims at all.

As for the claim that Wofford is inapplicable or that we were applying mere dicta from that case, the principle we apply comes from this part of the opinion: "It is enough to hold, as we do, that the only sentencing claims that may conceivably be covered by the savings clause are those based upon a retroactively applicable Supreme Court decision overturning circuit precedent." Wofford, 177 F.3d at 1245 (emphasis added). This passage plainly is holding. The panel in Wofford described it as holding, and it was the very basis upon which the panel disposed of the petitioner's claim. Wofford could demonstrate neither an intervening Supreme Court precedent nor an overruled circuit precedent, see id., and therefore he failed to satisfy the two necessary conditions for a sentencing claim to be covered by the savings clause. Nor did the panel in Wofford confine its holding to the circumstance where a petitioner challenges a sentence below the statutory maximum. Indeed, Davenport, the case upon which the panel in Wofford relied, rejected a petitioner's attempt to utilize the savings clause to challenge an ACCA enhancement that raised his sentence above the otherwise applicable statutory maximum. See In re Davenport, 147 F.3d at 607.

The dissent's interpretation of Wofford stems from its misreading of this Court's subsequent descriptions of Wofford's holding. As a shorthand, panels of this Court or the Court sitting en banc have characterized Wofford as holding "simply that the savings clause does not cover sentence claims that could have been raised in earlier proceedings." Gilbert, 640 F.3d at 1319; see also Turner v. Warden Coleman FCI (Medium), No. 10-12094, --- F.3d ----, 2013 WL 646089, at *3-4 (11th Cir. Feb. 22, 2013). What this shorthand means is that the petitioner must point to then-binding circuit precedent, subsequently overruled by the Supreme Court, that barred his claim during his earlier proceedings. Otherwise, there was nothing preventing him from raising his claim on direct appeal or in his first § 2255 motion. See Wofford, 177 F.3d at 1245 ("[H]is claims are sentencing claims, none of which rest upon a circuit law-busting, retroactively applicable Supreme Court decision. Wofford had a procedural opportunity to raise each of his claims and have it decided either at trial or on appeal.").

24

Williams's direct and collateral attacks. In United States v. Hill, 863 F.2d 1575, 1581-82 (11th Cir. 1989), a panel of this Court had held that § 810.02 was a "burglary" under the ACCA's enumerated felonies clause and thus was categorically a violent felony. Taylor v. United States, 495 U.S. 575 (1990), however, abrogated Hill. Taylor held that, for a state law offense to qualify as a burglary under the enumerated felonies clause, the offense had to require entry into an actual building or structure; thus, the Court held that a Missouri burglary statute, which criminalized entry of locations other than a structure, was not categorically a burglary for ACCA purposes. See id. at 599. Since Fla. Stat. § 810.02 defines dwelling to include both the structure and its surrounding curtilage, Taylor rendered it impossible to hold that § 810.02 was categorically a violent felony under the ACCA's enumerated felonies clause. After Taylor abrogated Hill, therefore, it was an open question in this Circuit whether § 810.02 might categorically constitute a violent felony not under the ACCA's enumerated felonies clause but rather under the so-called residual clause, which covers crimes that "otherwise involve[] conduct that presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii). See James v. United States, 550 U.S. 192, 201 (2007). Indeed, Williams does not suggest that Hill controlled the outcome of his case.

25

Williams was convicted in 1998, and his direct appeal and first 28 U.S.C. § 2255 motion were decided between 1998 and March 23, 2004, when a panel of this Court denied his motion for reconsideration of this Court's denial of a COA. Only after both Williams's direct appeal and his collateral attack did this Court decide United States v. James, 430 F.3d 1150 (11th Cir. 2005), aff'd, 550 U.S. 192, and United States v. Matthews, 466 F.3d 1271, 1275-76 (11th Cir. 2006), which held that attempted burglary and burglary of a dwelling under Florida law are violent felonies pursuant to the ACCA's residual clause.[5] In short, no Circuit precedent on the books during Williams's collateral attack foreclosed his argument and rendered his § 2255 motion an ineffective test of his claims.

Williams offers two alternate readings of Wofford. First, he argues that there is another route through the savings clause: that he is "entitled to a remedy under the familiar miscarriage of justice standard." As Williams puts it, quoting Davis v. United States, 417 U.S. 333, 346-47 (1974), "[t]here is 'no room for doubt' that, when a subsequent interpretation of a statute demonstrates that an individual is being incarcerated for 'an act the law does not make criminal,' there has been 'a complete miscarriage of justice' for which there should be habeas relief." This

---

[5] Arguably, these results naturally followed from an earlier decision, but that decision also postdated Williams's collateral attack and thus cannot help his case. On May 12, 2004 -- notably, after we denied his final attempt to obtain a COA -- a panel of this Court held, in United States v. Gunn, 369 F.3d 1229, 1238 (11th Cir. 2004), that attempted burglary of a dwelling was a crime of violence for purposes of the Sentencing Guidelines under a residual clause effectively identical to that in the ACCA.

argument misses twice. First, to the extent that Williams asserts he was convicted of an act that the law does not make criminal -- i.e., a "nonexistent offense," the phrase used in Wofford -- he misinterprets that phrase. Wofford used the phrase "nonexistent offense" in reference to the savings clause cases decided in the wake of Bailey. Bailey, which narrowed the meaning of 18 U.S.C. § 924(c)(1), meant that some prisoners' convictions were based on conduct no longer covered by the statute as interpreted by the Supreme Court -- that is, they were actually innocent. See Wofford, 177 F.3d at 1242. Indeed, in Gilbert, we characterized this line of cases as holding that the savings clause permitted prisoners "to bring their Bailey actual innocence claims in a § 2241 petition." See 640 F.3d at 1319. But Williams is not asserting that he is "actually innocent" of either his possession of a firearm offense or his underlying burglary offenses, nor could he. Rather, he is asserting only legal innocence: that his burglary convictions should not have been considered violent felonies under the ACCA. Cf. McKay v. United States, 657 F.3d 1190, 1197-1200 (11th Cir. 2011) (claim that a prior conviction did not qualify as a "crime of violence," for purposes of the career offender enhancement under U.S.S.G. § 4B1.1, was a claim "of legal, rather than factual, innocence"); United States v. Pettiford, 612 F.3d 270, 284 (4th Cir. 2010) (no actual innocence excuse for procedural default where the claim was that the prisoner's assault conviction was not a violent felony under the ACCA; the claim was a "legal

27

argument that this conviction should not have been classified as a 'violent felony'" and thus was "not cognizable as a claim of actual innocence").

Moreover, Davis itself decided a different issue: whether a claim "unsuccessfully litigated . . . on direct review" could be "assert[ed] on collateral attack." 417 U.S. at 342. The Supreme Court held that, where a precedent later establishes that the prisoner was convicted and punished "for an act that the law does not make criminal," he may seek collateral relief in his first § 2255 motion despite losing the issue on direct appeal. See id. at 346-47. Davis did not address whether the savings clause permits what is effectively a second or successive motion under the miscarriage of justice standard.

If the miscarriage of justice standard is inapplicable (and we think it is plainly inapplicable), Williams concedes that his claim must meet Wofford's two conditions for challenging a sentence. He maintains, however, that his first § 2255 motion was ineffective because Begay altered the test we once applied to determine whether a state conviction qualified as a violent felony under the ACCA's residual clause. In other words, according to Williams, Begay was the "circuit law-busting, retroactively applicable Supreme Court decision" that Wofford demands. See 177 F.3d at 1245. In this vein, he points to several of our decisions that Begay abrogated. See, e.g., United States v. Hall, 77 F.3d 398, 401-02 (11th Cir. 1996). As he puts it, "[t]he weight of this wall of unfavorable, broad

28

decisions" deprived him of an opportunity to obtain a reliable judicial determination of his claim.

The government reads Wofford differently, however, and urges us to conclude that "Williams cannot meet his burden, under Wofford, of demonstrating that his challenge to the burglary convictions that supported his armed career criminal designation is based on a retroactively applicable Supreme Court decision that has overturned circuit precedent," for two separate and independent reasons. The government points out that "[t]here was no controlling circuit law that would have foreclosed [Williams's] claims at time of his direct appeal in 1999." Moreover, there has been no Supreme Court decision that would alter this Court's treatment of Fla. Stat. § 810.02 as a violent felony. To the contrary, "the Supreme Court's decision in James . . . has essentially resolved the issue Williams has raised and it has resolved this issue in favor of the [government.]" Thus, the government maintains that the savings clause does not apply to Williams's claim. We agree with the first of the government's two points.

Williams's argument misapprehends the scope of the Supreme Court's relevant ACCA decisions and what we mean when we speak of "circuit law-busting" Supreme Court precedent. Invoking Begay alone would not be enough to establish jurisdiction over Williams's petition under the savings clause. Wofford does not require merely that the relevant Supreme Court precedent may have

altered the applicable legal test. When we evaluate whether <u>Begay</u> was "circuit-law busting" in the savings clause context, we must find that <u>Begay</u> "overturned circuit precedent" specifically addressing the claim Williams now asserts -- namely, that Fla. Stat. § 810.02 is not a violent felony for ACCA purposes. <u>See</u> <u>Wofford</u>, 177 F.3d at 1245. The reason the panel in <u>Wofford</u> imposed this requirement is that, if an issue had not been decided against a petitioner's position by prior precedent at the time of his first § 2255 motion, then that motion would have been an adequate procedure for testing his claim. The courts would have heard the claim and decided its merits, unlike in the case where adverse precedent already existed and thus "<u>stare decisis</u> would make us unwilling . . . to listen to him." <u>In re Davenport</u>, 147 F.3d at 611. In this case, there was no adverse precedent at the time of Williams's § 2255 motion that would have made us unwilling to listen to his claim.

<u>Begay</u> is not circuit law-busting in <u>Wofford</u>'s sense of the term. In <u>Begay</u>, the Supreme Court considered whether a New Mexico DUI offense was a violent felony for ACCA purposes. 553 U.S. at 139. <u>Begay</u> established that the proper test for determining which state law offenses qualified as violent felonies under the ACCA's residual clause was whether the crime involved "purposeful, violent, and aggressive conduct." <u>Id.</u> at 144-45 (internal quotation marks omitted). Applying this novel test to New Mexico's DUI offense, the Supreme Court concluded that it was not a violent felony. <u>See id.</u> at 148.

30

Begay changed the analytical framework for determining whether a given state offense is a violent felony at a high level of abstraction by crafting its "purposeful, violent, and aggressive" test. It did not abrogate all of this Court's pre-Begay violent felony jurisprudence. Thus, it is not at all clear that Begay would have abrogated any circuit precedent holding § 810.02 was a violent felony. But in any case, we need not dwell on that question because, at the time of Williams's first § 2255 motion, there was no circuit precedent for Begay to bust.[6] None of the cases Williams cites are apposite because they concern criminal statutes other than Fla. Stat. § 810.02. United States v. Wilkerson, for instance, held that conspiracy to commit robbery under Florida law was a violent felony. See 286 F.3d 1324, 1325-26 (11th Cir. 2002); see also United States v. Gay, 251 F.3d 950, 954 (11th Cir. 2001) (felony escape); United States v. Patton, 114 F.3d 174, 176-77 (11th Cir. 1997) (conveyance of a weapon in federal prison); United States v. Hall, 77 F.3d 398, 401-02 (11th Cir. 1996) (carrying a concealed firearm). The most that

---

[6] We note in passing that the Supreme Court recently has substantially circumscribed the reach of Begay so that its similar-in-kind requirement no longer applies to intentional crimes like Fla. Stat. § 810.02. In Sykes v. United States, the Court clarified that the central inquiry under the ACCA's residual clause, at least for intentional crimes, is whether the offense "presents a serious potential risk of physical injury to another" comparable to the risk posed by the ACCA's enumerated crimes. 131 S. Ct. 2267, 2273 (2011); accord id. at 2275-76 (distinguishing Begay's analysis as applying to strict liability, negligence, and recklessness crimes, and noting that "[i]n many cases the purposeful, violent, and aggressive inquiry will be redundant with the inquiry into risk"). We have recognized that Sykes's comparative risk inquiry, not Begay's "purposeful, violent, and aggressive" formulation, applies when the offense in question involves "knowing or intentional conduct." United States v. Chitwood, 676 F.3d 971, 979 (11th Cir. 2012). In any event, Williams cannot claim either Begay or Sykes is circuit law-busting in light of our determination that there was no circuit precedent for the Supreme Court's decisions to bust.

31

Williams can demonstrate with this "wall of broad, unfavorable decisions" is that, at the time of his first § 2255 motion, the courts addressing his claim arguably reached an incorrect outcome. But, as we have explained, simply because a procedurally adequate test may get the answer wrong -- and it is by no means clear that the answer was wrong in this case -- cannot mean that a petitioner is entitled to utilize the savings clause to have his claim reevaluated still again in light of novel Supreme Court precedent. See Gilbert, 640 F.3d at 1307-09; Wofford, 177 F.3d at 1244. Williams has to show that the test was not procedurally adequate because erroneous circuit precedent foreclosed his argument.

This he cannot do. Williams himself raised an objection to the use of his burglary convictions as ACCA predicates in his first § 2255 motion, but this argument was rejected by the district court. Subsequently, the district court denied him a COA on this claim, as did this Court. Williams then moved for reconsideration of that denial, but this Court denied that motion on March 23, 2004. The order denying reconsideration noted that "the use of appellant's 1989 burglary conviction as a predicate for the armed career criminal enhancement was arguably erroneous under Taylor," but characterized the claim as "ultimately immaterial" because Williams had three other convictions, including the 1990 burglary, that qualified him for the ACCA enhancement. Thus, Williams's first § 2255 motion was not "inadequate or ineffective to test the legality of his [ACCA

32

enhancement]," see 28 U.S.C. § 2255(e) -- in fact, his first motion did test that very issue. Whether that test yielded the right answer is a different matter, and one that is not dispositive of the question of whether Williams now may pursue relief through the savings clause. See Gilbert, 640 F.3d at 1308 ("the savings clause would eviscerate the second or successive motions bar," and no subsequent motion or petition "could be dismissed without a determination of the merits of the claims [it] raise[s]" if the savings clause allowed all wrongfully decided claims in a first § 2255 motion to be revived in a § 2241 petition); Wofford 177 F.3d at 1244. Rather, what is dispositive is that his claim was not foreclosed at the time by binding Eleventh Circuit precedent that Begay overruled or abrogated.[7]

---

[7] The dissent mainly says that Wofford is inapplicable. However, the dissent also suggests that Williams has satisfied Wofford's conditions because he was foreclosed from raising his claim in his direct appeal and first § 2255 motion. Dissenting Op. at 47. However, the dissent ignores Wofford's holding, which limits the savings clause's applicability to only those claims "based upon a retroactively applicable Supreme Court decision overturning circuit precedent." 177 F.3d at 1245. Williams has identified the Supreme Court case, Begay, but he has not identified any circuit precedent, overruled by Begay, that held that Fla. Stat. § 810.02 was a violent felony under the ACCA's residual clause. Nor does the dissent cite to such a case; nor, finally, can we find one.

     As we see it, the dissent's mistake is to conflate Williams's lack of success on the merits of his first § 2255 motion with the idea that Williams was foreclosed from even raising the claim. Plainly, his claim was not foreclosed. But if we follow the dissent's reasoning to its ultimate conclusion, every § 2255 motion that a panel of this Court comes to believe, years later, is wrongly decided could be revived under § 2241 by virtue of the savings clause. This view is unsustainable because it is wholly inconsistent with the bar on second or successive motions, see 28 U.S.C. § 2255(h); indeed, it would eviscerate the bar. Wofford's holding makes sense precisely because it acknowledges the force of that bar while also preserving a meaningful role for the savings clause. See 177 F.3d at 1244. At all events, we are bound by this Court's precedent.

     Finally, we note that the district court denied Williams's claim not by relying on circuit precedent that held that his Fla. Stat. § 810.02 offense was categorically a violent felony under the ACCA's residual clause. Rather, the court found, based on the PSR, that Williams's

33

In addressing a virtually identical fact pattern to the one presented in this case, the Seventh Circuit held that the savings clause did not permit a prisoner to file a § 2241 petition to challenge his ACCA predicate felonies when no circuit precedent had prevented him from doing so during his direct appeal or first § 2255 motion. Hill v. Werlinger, 695 F.3d 644 (7th Cir. 2012). In that case, Hill was convicted in 1999 of possession of a firearm by a convicted felon and was sentenced under the ACCA. Id. at 645-46. The district court found three predicate felonies, one for attempted murder and two for aggravated battery. Id. at 646. Hill later filed a § 2255 motion challenging his indictment as defective and arguing that his trial counsel was ineffective; that motion was denied. See id. Much later, Hill filed a § 2241 petition challenging the characterization of one of his aggravated battery convictions as a violent felony in light of the Supreme Court's holding in Johnson v. United States, 559 U.S. 133 (2010). See Hill, 695 F.3d at 646-49. Like Williams, Hill's § 2241 petition argued that he had been sentenced above the statutory maximum because one of his prior convictions no longer qualified as a violent felony under a subsequent Supreme Court precedent.

The Seventh Circuit rejected Hill's attempt to utilize the savings clause because, in its view, Hill could not "show that a § 2255 remedy [wa]s inadequate

---

burglaries were "'generic' burglaries . . . which involved an unlawful entry into a building or other structure" and therefore were violent felonies under the ACCA's enumerated felonies clause. This holding had nothing to do with the ACCA's residual clause, which was the subject of Begay, but rather was a direct application of the Supreme Court's holding in Taylor.

or ineffective" since he "failed to show that his claim could not have been presented in his direct appeal or § 2255 motion." Id. at 648. "[T]he fact that a position is novel does not allow a prisoner to bypass section 2255. Only if the position is foreclosed (as distinct from not being supported by -- from being, in other words, novel) by precedent is a § 2255 remedy inadequate." Id. (internal quotation marks and alteration omitted). In such circumstances, where "Hill ha[d] not argued that binding precedent foreclosed his claim" but only that "before Johnson, the law was unclear regarding what amount of force was necessary to constitute a 'violent felony' under the ACCA," the "lack of clarity in the law before Johnson did not prevent Hill from bringing his claim either in a direct appeal or in his § 2255 motion." Id. at 649. The Seventh Circuit held that the savings clause did not apply in such circumstances, id., and the logic of Hill applies with equal force to Williams's case. As Williams himself concedes, "this Court had never specifically applied its pre-Begay test to Florida's 1989 'burglary of a dwelling' law," and this concession is fatal to his § 2241 petition.

In short, Williams had an adequate and reasonable opportunity to test the legality of his detention both on direct appeal and in his first § 2255 motion, and he took that opportunity. While his claim that his Florida burglary convictions could not qualify as ACCA violent felonies was novel at the time of his first § 2255 petition, it was not foreclosed by our precedent. Thus, we conclude that he cannot

35

now raise that claim once again in a § 2241 petition. The district court lacked subject-matter jurisdiction to entertain the matter. Accordingly, we affirm the dismissal of the petition.

AFFIRMED.

MARTIN, Circuit Judge, dissenting:

Because I believe the federal courts are not only authorized, but obligated to address the merits of a claim like that asserted by Albert Williams here, I respectfully dissent from the majority opinion.

The majority is correct that Mr. Williams has made "[s]everal failed collateral attacks" on his Armed Career Criminal Act (ACCA) sentence.[1] Majority Op. at 4. Despite the failure of his repeated attacks, Mr. Williams perseveres in asserting that the prior convictions relied upon in sentencing him resulted in a sentence beyond that allowed by law. Aside from the District Court's review of his initial § 2255 motion, every court approached by Mr. Williams has declined to accept his case for consideration.

For Mr. Williams especially, it is important that his claim now be considered on the merits. That is because if he is right, he is serving a term of imprisonment that exceeds the maximum term authorized by Congress. The crime for which he was convicted carries a maximum sentence of 10 years imprisonment. 18 U.S.C. §§ 922(g)(1), 924(a)(2) (2006). Only if a defendant has already been convicted of three violent felonies or serious drug offenses does the ACCA provide for a mandatory minimum sentence of 15 years. Id. § 924(e)(1). Mr. Williams was sentenced to 293 months of incarceration (more than 24 years) and says that his

---

[1] I have attached a chart delineating each of Mr. Williams's attempts to attack his sentence, as well as the treatment he got from both the trial court in the district where he filed and our Court.

sentence should have been capped at 10 years (120 months), because he did not have three prior convictions for a violent felony or a serious drug offense as required for the enhanced sentence.

While the Constitution permits sentencing courts "wide discretion in determining what sentence to impose," United States v. Tucker, 404 U.S. 443, 446, 92 S. Ct. 589, 591 (1972), it is clear that "the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause," Gardner v. Florida, 430 U.S. 349, 358, 97 S. Ct. 1197, 1204 (1977) (plurality opinion).  If Mr. Williams was wrongly convicted of being an armed career criminal because of an error of law, his sentence is unconstitutional.  It certainly must be true that if a defendant is sentenced to more than the maximum term authorized by law, he has been deprived of due process.  The Supreme Court has held that a federal defendant has a "constitutional right to be deprived of liberty as punishment for criminal conduct only to the extent authorized by Congress."  Whalen v. United States, 445 U.S. 684, 690, 100 S. Ct. 1432, 1437 (1980).

The majority says that we do not have jurisdiction to consider Mr. Williams's claim because he has already filed more than the one habeas action he is permitted by law.  In doing so, the majority recognizes that the so-called "savings clause," 28 U.S.C. § 2255(e) (2006), allows for a second or successive habeas claim where a prisoner has already asked for habeas, if the remedy he

38

received "is inadequate or ineffective to test the legality of his detention." Id. However, the majority says that Mr. Williams is not now entitled to the relief offered by § 2255's saving clause because he "cannot show that this Circuit's law foreclosed him from raising an objection to the treatment of his two Florida burglary convictions as violent felonies under the ACCA." Majority Op. at 23–24. I cannot agree that this is a sufficient reason to conclude that the savings clause does not apply to Mr. Williams's case.

The majority is quite right when it concludes that Gilbert expressly declined to decide the issue presented by Mr. Williams's case—whether "the savings clause in § 2255(e) would permit a prisoner to bring a § 2241 petition claiming that he was sentenced to a term of imprisonment exceeding the statutory maximum." Gilbert v. United States, 640 F.3d 1293, 1323 (11th Cir. 2011) (en banc). However, the majority misreads our precedent when it says that Mr. Williams, or any other petitioner sentenced to more time than the statute permits, must satisfy Wofford's three-part test before he is entitled to the protection of the savings clause of § 2255.[2]  Majority Op. at 19–23.  Setting aside for the moment the constitutional concerns, a straightforward reading of Wofford and Gilbert

---

[2]  The majority refers to Wofford's three-factor test as dicta, see Majority Op. at 22–23, but nonetheless insists that Wofford's test survives in the form of "two necessary conditions." I can in no way distinguish the majority's "two necessary conditions" from Wofford's three-factor test. This Court has been clear that what Wofford actually held was "the savings clause does not cover sentence claims that could have been raised in earlier proceedings." Gilbert, 640 F.3d at 1319. As I see it, Mr. Williams's case does not present a "sentence claim" but rather a claim that his continued detention violates the statute under which it was imposed.

39

demonstrates that <u>Wofford</u>'s threshold test is dicta that does not apply to someone serving a sentence beyond what the statute allows.

In contrast to Mr. Williams, Mr. Wofford did not claim that he was sentenced above the statutory maximum. In fact he was not. Mr. Wofford was indicted for "conspiracy to possess with intent to distribute cocaine, possession with intent to distribute cocaine, possession of a firearm in relation to a drug trafficking crime, and being a felon in possession of a firearm." <u>Wofford</u>, 177 F.3d at 1237. He "pleaded guilty to the conspiracy and felon in possession of a firearm counts . . . . [and] was subsequently sentenced to a 300-month term of incarceration on the conspiracy count and a concurrent 60-month term of incarceration on the felon in possession of a firearm count." <u>Id.</u> Obviously, a 60-month concurrent term of incarceration does not exceed the 10 year statutory maximum for being a felon in possession of a firearm. <u>See</u> 18 U.S.C. §§ 922(g)(1), 924(a)(2). Since this court's <u>Wofford</u> opinion did not address a claim that a petitioner's sentence was above the statutory maximum, anything it said about this type of claim is dicta. It is well established that a decision of this Court cannot extend further than the facts and circumstances of the case in which it arises. <u>See, e.g.</u>, <u>Watts v. BellSouth Telecomms, Inc.</u>, 316 F.3d 1203, 1207 (11th Cir. 2003) ("Whatever their opinions say, judicial decisions cannot make law beyond the facts of the cases in which those decisions are announced."); <u>United</u>

States v. Aguillard, 217 F.3d 1319, 1321 (11th Cir. 2000); United States v. Eggersdorf, 126 F.3d 1318, 1322 n.4 (11th Cir. 1997). Wofford's dicta therefore cannot constrain our analysis of a case in which a prisoner sits in prison beyond the time the statute allows. Gilbert itself confirms this.

In Gilbert, this Court held that "the savings clause does not authorize a federal prisoner to bring in a § 2241 petition a claim . . . that the sentencing guidelines were misapplied in a way that resulted in a longer sentence not exceeding the statutory maximum." 640 F.3d at 1323. Neither party to Mr. Williams's appeal disputes that Gilbert expressly did not "decide if the savings clause in § 2255(e) would permit a prisoner to bring a § 2241 petition claiming that he was sentenced to a term of imprisonment exceeding the statutory maximum." Id. Thus, Gilbert made clear that the holding in Wofford was limited to sentencing claims other than those like the one Mr. Williams asserts here.

Gilbert explained that "Bailey actual innocence claims are what the Wofford panel had in mind when it stated that the savings clause would permit a prisoner to bring a § 2241 petition claiming that a retroactively applicable, circuit law-busting decision of the Supreme Court established that he had been convicted of a nonexistent crime." Id. at 1319 (citing Wofford, 177 F.3d at 1242–45). The en banc court clarified "[t]hat statement was, however, only dicta because all of Wofford's claims were sentencing claims, 'none of which rested upon a circuit

41

law-busting, retroactively applicable Supreme Court decision.'" Id. (alterations omitted) (citing Wofford, 177 F.3d at 1245) (emphasis added). Gilbert made clear that the actual holding of Wofford "is simply that the savings clause does not cover sentence claims that could have been raised in earlier proceedings." Id. (citing Wofford, 177 F.3d at 1244–45)

Indeed, the Gilbert opinion expressly acknowledged that "[t]he Wofford opinion also contains dicta that the savings clause 'may conceivably' apply to some sentencing claims in some circumstances where there has been a fundamental defect in sentencing that the prisoner had no opportunity to have corrected before the end of his § 2255 proceeding." Id. at 1319 n.20 (emphasis added). The Gilbert en banc majority speculated that the Wofford panel "may have had in mind . . . pure Begay errors, by which we mean errors in the application of the 'violent felony' enhancement as defined in 18 U.S.C. § 924(e)(2)(B), resulting in a higher statutory minimum and maximum sentence under § 924(e)." Id. The Gilbert court acknowledged that "[a] Begay error in the classification of a prior conviction that was used to impose an enhanced sentence under § 924(e) would necessarily have resulted in the defendant being sentenced to a term of imprisonment that exceeded what would have been the statutory maximum without the error." Id. Based on this, Gilbert observed that "a pure Begay error would fit within the government's concession that the savings clause applies to errors that resulted in a

42

sentence beyond the statutory maximum that would have applied but for the error."
Id.  However, because Mr. Gilbert claimed only that he was wrongly classified as a
career offender under the Guidelines, the en banc court concluded "we have no
occasion to decide whether what the Wofford dicta conceived might be the law,
and what the government concedes should be the law, is actually the law."  Id.

In putting Wofford to the use it does, the majority also ignores an earlier
panel of this court which held that Wofford's threshold test does not apply to a
defendant raising a pure Begay error.  Not long ago, that panel observed that,
"[s]itting en banc . . . we recently retreated from the purported three-factor test
enumerated in Wofford, calling it 'only dicta,' and explaining that '[t]he actual
holding of the Wofford decision . . . is simply that the savings clause does not
cover sentence claims that could have been raised in earlier proceedings."  Turner
v. Warden Coleman FCI (Medium), No. 10–12094, ___ F. 3d. ___, ___,  2013 WL
646089, * 7 (11th Cir. Feb. 22, 2013).

Given that Wofford's threshold test is dicta, at least as it relates to sentences
imposed above the statutory maximum, it is not binding on this panel.  Therefore, I
dissent from the majority's application of that test to conclude that this Court lacks
jurisdiction to consider a claim that a defendant was sentenced above the
maximum authorized by Congress.  By applying Wofford's threshold test to Mr.
Williams's pure Begay error claim, the majority is asking and answering the wrong

jurisdictional question.  The correct question to ask is whether Mr. Williams was erroneously sentenced as an armed career criminal in light of <u>Begay</u>.  If he was, the federal courts never had jurisdiction to sentence him above the 10 year maximum allowed by law.   The existence or nonexistence of circuit precedent which conflicts with <u>Begay</u> cannot operate to confer jurisdiction on this Court.  Neither can it decide the question of whether § 2255 is inadequate or ineffective.

Nevertheless, the majority is not willing here to examine the merits of Mr. Williams's claim that he was sentenced to more time than allowed by the statute because he cannot identify preexisting precedent from this Court that foreclosed his claim that he was wrongly classified as an armed career criminal at the time of his direct appeal or initial § 2255 motion.  Majority Op. at 23–24.  But again, the preexistence or nonexistence of circuit precedent has no bearing on the fundamental defect in a defendant's armed career criminal classification once a retroactively applicable Supreme Court decision demonstrates that the defendant was sentenced to longer than the statute allows.   If Mr. Williams is right, and <u>Begay</u> establishes that two of his Florida burglaries do not count as "violent felonies" under the ACCA, then Mr. Williams was <u>never</u> an armed career criminal. <u>Begay</u> did not change the meaning of the ACCA that may have prevailed in this Court or the district courts, but instead provided "an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to

that construction." Rivers v. Roadway Express, Inc., 511 U.S. 298, 312 –13 & n.12, 114 S. Ct. 1510, 1519 & n.12 (1994); see also Bunkley v. Florida, 538 U.S 835, 840–42, 123 S. Ct. 2020, 2022–24 (2003);  Fiore v. White, 531 U.S. 225, 226, 121 S. Ct. 712, 713 (2001) (holding a defendant's conviction and continued incarceration violates due process where it is based on conduct that a criminal statute, as properly interpreted, does not prohibit).  The issue is not whether Mr. Williams may no longer be considered an armed career criminal, but rather whether he was ever an armed career criminal to begin with.  If Mr. Williams can show that he was never an armed career criminal in light of Begay, then his continued incarceration violates due process and § 2255 is "inadequate or ineffective to test the legality of his detention."  28 U.S.C. § 2255(e).

I certainly accept that "the point where finality holds its own against error correction is reached not later than the end of the first round of collateral review" for claims of sentencing error where a defendant is serving a sentence below the term of imprisonment allowed by the statute.  Gilbert, 640 F. 3d at 1312.  But concerns about finality do not trump the principle that "a defendant may not receive a greater sentence than the legislature has authorized."  United States v. DiFrancesco, 449 U.S. 117, 139, 101 S. Ct. 426, 438 (1980); see also United States v. Bushert, 997 F.2d 1343, 1350 n.18 (11th Cir. 1993) ("It is both axiomatic and

jurisdictional that a court of the United States may not impose a penalty for a crime beyond that which is authorized by statute.").

For us to sanction the incarceration of a prisoner for a period longer than Congress has authorized violates important separation-of-powers principles. "[T]he power of punishment is vested in the legislative, not in the judicial, department," and "[i]t is the legislature, not the Court, which is to . . . ordain [the] punishment." United States v. Wiltberger, 18 U.S. (5 Wheat.) 76, 95 (1820). Indeed, a sentence beyond the maximum provided by law is void because federal courts have no authority to impose a punishment that the legislature has not authorized it to impose. See Chapman v. United States, 500 U.S. 453, 465, 111 S. Ct. 1919, 1927 (1991) (holding that a defendant is "eligible for, and the court may impose, whatever punishment is authorized by statute for his offense"); see also Harmelin v. Michigan, 501 U.S. 957, 975, 111 S. Ct. 2680, 2691 (1991) (Scalia, J.) ("There were no common-law punishments in the federal system. . . ."); Jones v. Thomas, 491 U.S. 376, 383, 109 S. Ct. 2522, 2526 (1989) (explaining that the federal habeas petitioner in Ex parte Lange, 85 U.S. (18 Wall.) 163 (1874), was entitled to habeas relief because his sentence of imprisonment and a fine "obviously exceeded that authorized by the legislature" where the crime that he was convicted of carried a punishment of imprisonment or a fine). Cf. United States v. Bass, 404 U.S. 336, 348, 92 S. Ct. 515, 523 (1971) (noting "the

46

instinctive distastes against men languishing in prison unless the lawmaker has clearly said they should") (quotation marks omitted).

At the time Mr. Williams filed his first § 2255 motion—long before Begay authoritatively interpreted  § 924(e)(2)(B)—he claimed he was not properly sentenced as an armed career criminal because his convictions for burglary under Florida law were not "violent felon[ies]" as that term is used in the ACCA.  Thus, although the majority says there was no binding circuit precedent foreclosing Mr. Williams's claim on direct appeal or in his first § 2255 petition, he has certainly been treated as though there was.  Indeed, to see that his argument was foreclosed, we  need look no further than the fact that our Court denied Mr. Williams a certificate of appealability (COA) when he raised the issue of whether his prior convictions qualified as predicate offenses for 18 U.S.C. § 924(e) in his first § 2255 petition for habeas relief.[3]  Williams v. United States, No. 03-15325 (11th Cir. Jan. 27, 2004).  In doing so, we certainly appeared to endorse the District Court's conclusion that his claim was without "factual or legal support."[4]

---

[3]  He raised this issue in the context of an ineffective assistance of counsel claim—i.e., his lawyer was ineffective for failing to argue that his prior burglary convictions did not qualify as predicate offenses for 18 U.S.C. § 924(e).

[4]  Given that neither the District Court nor this Court viewed any of Mr. Williams's § 2255 claims as sufficient to satisfy the low threshold for obtaining a COA, it seems odd to say that his claims were not previously foreclosed.  The well-worn standard for obtaining a COA under 28 U.S.C. § 2253(c)(2), is that "a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that . . . includes showing that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues

47

Williams v. United States, No. 1:00-cv-02452 (S.D. Fla. Jan. 29, 2003) (adopting the Magistrate Judge's Report and Recommendation "in its entirety," and denying Mr. Williams's § 2255 petition).  We then went on to deny Mr. Williams's motion for reconsideration of this argument.  Williams v. United States, No. 03-15325 (11th Cir. Mar. 23, 2004).  And now in this iteration of Mr. Williams's attempts to have us consider whether he is serving a sentence beyond that allowed by law, the majority imposes a new hurdle, grasped from Wofford, which never ruled on this type of claim.  Since Begay was decided by the United States Supreme Court no court has ever evaluated Mr. Williams's prior convictions under the standards it announced.

As the majority has recognized—and both the government and Mr. Williams agree—the District Court was mistaken when it concluded that Mr. Williams was "foreclosed from challenging his sentence . . . using 28 U.S.C. § 2255(e)'s savings clause" by this Court's decision in Gilbert.  Doc. 24 at 2.  Insofar as the issue he now raises was not decided by this Court in Gilbert, I would reverse the District Court's order and remand for consideration (for the first time) of the question of whether Mr. Williams's 1989 and 1990 Florida burglary convictions are violent felonies under the ACCA's residual clause, and under the analysis provided in

---

presented were adequate to deserve encouragement to proceed further."  Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04 (2000) (quotation marks omitted).

Begay v. United States, 553 U.S. 137, 128 S. Ct. 1581 (2008).  See Okongwu v. Reno, 229 F.3d 1327, 1330–31 (11th Cir. 2000) (remanding case for consideration of issues not reached where the District Court improperly dismissed for lack of jurisdiction).  If Mr. Williams can demonstrate to the District Court that he was erroneously classified as an armed career criminal, he is entitled to habeas relief under § 2241.

For these reasons, I respectfully dissent.

MR. WILLIAMS'S HABEAS FILINGS

| Filing | Relevant Issue(s) Raised | Disposition |
|---|---|---|
| First § 2255 Petition (S.D. Fla. July 2000) | • Mr. Williams's counsel was ineffective for having failed to object to the use of his Florida burglary convictions as predicate offenses for ACCA enhancement because Florida's burglary statute encompasses conduct beyond "generic burglary" as defined by the Sup. Ct. in <u>Taylor v. United States</u>, 495 U.S. 575 (1990) | • Dist. Ct. denied relief, determining that "no factual or legal support existed for . . . an objection" that Mr. Williams's Florida burglary convictions were not predicate offenses for ACCA enhancement, and denied Williams's request for a COA, No. 1:00-cv-2452 (S.D. Fla. Jan. 29, 2003)<br>• 11th Cir. denied Williams's request for a COA<br>• 11th Cir. denied Williams's motion for reconsideration, observing that "[a]lthough the use of appellant's 1989 burglary conviction as a predicate for the armed career criminal enhancement was arguably erroneous under <u>Taylor</u> . . . that point is ultimately immaterial," No. 03-15325 (11th Cir. Mar. 23, 2004)<br>• Sup. Ct. denied Williams's petition for certiorari, 543 U.S. 864 (2004), <u>reh'g denied</u>, 543 U.S. 1083 (2005) |
| First Rule 60(b) Motion (S.D. Fla. Apr. 2005) | • Dist. Ct.'s denial of Williams's § 2255 motion was erroneous under <u>Shepard v. United States</u>, 544 U.S. 13 (2005) | • Dist. Ct. denied relief without consideration of the merits and denied Williams's request for a COA<br>• 11th Cir. denied Williams's request for a COA<br>• Sup. Ct. denied Williams's petition for certiorari, 547 U.S. 1141 (2006), <u>reh'g denied</u>, 548 U.S. 932 (2006) |
| Application to File Second/Successive § 2255 Petition (11th Cir. Jan. 2006) | • Dist. Ct. enhanced Williams's sentence based on factual findings not admitted by Williams<br>• Dist. Ct. violated Williams's right to due process by failing to use reliable documents in determining that he had qualifying prior convictions for ACCA enhancement | • 11th Cir. denied application, determining that Williams's claims did not satisfy gatekeeping criteria of 28 U.S.C. § 2244(b)(2), No. 06-10627 (11th Cir. Feb. 10, 2006) |
| Second Rule 60(b) Motion (S.D. Fla. June 2006) | • Dist. Ct. erred under <u>Taylor</u> and <u>Shepard</u> in determining that Williams qualified for ACCA enhancement | • Dist. Ct. denied relief without consideration of the merits and denied Williams's request for a COA<br>• 11th Cir. denied Williams's request for a COA, denied Williams's motion for reconsideration, and denied Williams's motion to proceed <u>in forma pauperis</u> |

| First § 2241 Petition (E.D.N.C. July 2007) | • Dist. Ct. erred under <u>Taylor</u> and <u>Shepard</u> in determining that Williams qualified for ACCA enhancement | • Dist. Ct. dismissed petition upon government's motion because Williams "failed to satisfy [§ 2255's] gatekeeping provision," No. 5:07-hc-2143 (E.D.N.C. Feb. 19, 2008)<br>• 4th Cir. summarily affirmed in unpublished opinion |
|---|---|---|
| First § 2255(f)(3) Petition (S.D. Fla. Sept. 2010) | • Dist. Ct. erred in applying ACCA enhancement because under the Sup. Ct.'s analysis in <u>Begay v. United States</u>, 553 U.S. 137 (2008), Williams had only two ACCA qualifying convictions | • Dist. Ct. denied relief without consideration of the merits |
| Instant § 2241 Petition (S.D. Ga. Nov. 2010) | • Dist. Ct. erred in applying ACCA enhancement because Williams's Florida burglary convictions are not ACCA predicate offenses under <u>Begay</u> | • Dist. Ct. dismissed, determining that under <u>Gilbert v. United States</u>, 640 F.3d 1293 (11th Cir. 2011) (en banc), "a petitioner is foreclosed from challenging his sentence, rather than his conviction, using 28 U.S.C. § 2255(e)'s savings clause." Doc. 24 at 1–2.<br>• 11th Cir. rejects Dist. Ct.'s <u>Gilbert</u> analysis but affirms dismissal, determining that § 2255(e) establishes jurisdictional limitations on § 2241 petitions and that Williams's claim does not fall within those limitations because no Circuit precedent foreclosed him from raising his claim in his initial habeas petition, No. 11-13306 (11th Cir. argued Jan. 15, 2012) |