MARTIN, Circuit Judge,
concurring in part and dissenting in part:
I concur in the Majority’s conclusion that the savings clause in 28 U.S.C. § 2255(e), together with 28 U.S.C. § 2241, give Mr. Bryant a remedy in this case. Mr. Bryant’s claim is that he was wrongly sentenced under the Armed Career Criminal Act of 1984 (ACCA), 18 U.S.C. § 924(e). His case thus squarely presents the issue left open in our en banc decision in Gilbert: whether § 2241 is available where the asserted error in sentencing resulted in a term of incarceration above the statutory maximum that would have applied but for the error. Gilbert v. United States, 640 F.3d 1293, 1306-07, 1319 n.20 (11th Cir.2011) (en banc). In other words, this case is about a man who, because of a mistake made by a judge at the time he was sentenced, is now in prison beyond the time allowed by the statute setting his punishment.
The government’s concession that savings clause relief is available for pure Be-gay error is commendable.[1] It is also consistent with the position it took in Gilbert, where it argued that “[Mr.] Gilbert’s guidelines-misapplication claim d[id] not present a ‘fundamental’ sentencing defect ... because his actual sentence was within statutory limits and could be reimposed today.” Br. for the U.S. on Reh’g En Banc at 20, Gilbert, 640 F.3d 1292 (No. 09-12513), 2011 WL 493800, at *20. But the government also'told us at that time that “[fjundamental sentencing defects, such as an erroneous ACCA sentence, should be redressable under the savings clause under the same circumstances that would apply to a non-existent-offense claim.” Id. So it is not surprising that the government continues to disavow any institutional interest in keeping a person in prison beyond the statutory maximum sentence prescribed by Congress. Indeed, the government has a strong interest in preventing this type of injustice. See Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935) (“The United' States Attorney is the repre *1292 sentative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.”).
If the savings clause means anything in the sentencing context, it must apply to cases in which the sentence exceeds that authorized by Congress. We begin with the precept that federal courts have limited jurisdiction and it is Congress, not the courts, which sets the range of punishment by statute, just as Congress establishes the elements of crimes by statute. See United States v. Lanier, 520 U.S. 259, 267 n.6, 117 S.Ct. 1219, 1226 n.6, 137 L.Ed.2d 432 (1997) (“Federal crimes are defined by Congress, not the courts.... ”); Whalen v. United States, 445 U.S. 684, 689, 100 S.Ct. 1432, 1436, 63 L.Ed.2d 715 (1980) (“[T]he power to define criminal offenses and to prescribe the punishments to be imposed upon those found guilty of -them,, resides wholly with the Congress.”); United States v. Wiltberger, 18 U.S. (5 Wheat) 76, 95, 5 L.Ed. 37 (1820) (“It is the legislature, not the Court, which is to define a crime, and ordain its punishment.”). Congress may give federal courts broad discretion to impose a sentence within a statutory range, but separation of powers principles require that the limits of that sentence fall within the parameters set by Congress. See Chapman v. United States, 500 U.S. 453, 465, 111 S.Ct. 1919, 1927, 114 L.Ed.2d 524 (1991) (“[A] person who has been ... convicted is eligible for, and the court may impose, whatever punishment is authorized by statute for his offense.... ”); Ex Parte Lange, 85 U.S. (18 Wall.) 163, 176, 21 L.Ed. 872 (1873) (granting habeas relief to a federal prisoner who had been sentenced to a term of imprisonment and a fine where the statute prescribed imprisonment or a fine); see also McCleskey v. Zant, 499 U.S. 467, 478, 111 S.Ct. 1454, 1462, 113 L.Ed.2d 517 (1991) (confirming that Ex Parte Lange involved a “sentence[ ] imposed without statutory authorization”).
Where the Supreme Court provides an authoritative judicial interpretation of a substantive criminal statute, like it did in Begay, the Court does not change the meaning of the law in such a way that implicates finality concerns, but rather establishes what the law has always meant. See Rivers v. Roadway Express, Inc., 511 U.S. 298, 312-13 & n.12, 114 S.Ct. 1510, 1519 & n.12, 128 L.Ed.2d 274 (1994); see also Fiore v. White, 531 U.S. 225, 228-29, 121 S.Ct. 712, 714, 148 L.Ed.2d 629 (2001) (holding that it violates due process to convict a defendant for conduct that a “criminal statute, as properly interpreted, does not prohibit”). In this way, Begay, Archer,[2] and Canty[3] tell us that a prior offense for carrying a concealed firearm was never a “violent felony” under the ACCA, and therefore Mr. Bryant was never an armed career criminal. Because he never was an armed career criminal, the District Court never had jurisdiction to impose the sentence it did. Certainly our august federal courts are not without power to remedy a sentence mistakenly imposed by a court that lacked jurisdiction to impose it. Indeed it is the responsibility *1293 of federal courts to cure a detention that exceeded its legal limits. 1
For these reasons, as well as those expressed by the Majority, I agree that the savings clause must be available to habeas petitioners like Mr. Bryant who can demonstrate that they were sentenced to a longer term than what Congress provided by statute. I cannot agree, however, with those portions of the Majority’s opinion that go beyond what the law provides or what this case requires. To this end, I will discuss the three ways in which I believe the Majority’s analysis is flawed.
1. SCOPE OF THE § 2241 HABEAS REMEDY
Part XII of the Majority opinion concludes that reducing Mr. Bryant’s sentence to ten years is the remedy. While I agree this is the proper result for Mr. Bryant here, the Majority’s analysis in Part XII goes beyond what is necessary to decide the question his case presents.
a. Granting The Writ Without Resen-tencing Is The Appropriate Remedy In Mr. Bryant’s Case Because He Has Already Served. More Than Ten Years In Prison.
Our panel unanimously agrees that Mr. Bryant’s current sentence exceeds his statutory maximum of 10 years under 18 U.S.C. § 924(a). Mr. Bryant was sentenced on March 15, 2002 to serve 235-months imprisonment as well as three years of supervised release for a single violation of §§ 922(g) and 924(e)(1). The day he was sentenced, Mr. Bryant was immediately remanded to the custody of the U.S. Marshals to await designation by the Bureau of Prisons.[4] Thus, from the date of his sentencing until today, Mr. Bryant has already served 4,302 days (or 11 years, 9 months, and 9 days) — well in excess of the statutory maximum of 10 years.
Because Mr. Bryant has already served more time in prison than authorized by Congress, we should simply grant the writ, vacate the District Court’s judgment denying his §' 2241 petition, and remand the case to the District Court for the Middle District of Florida. There, the District Court would enter this Court’s Order granting the writ and direct the Warden at Coleman Correctional Institution to immediately release Mr. Bryant. See 28 U.S.C. § 2241(a) (“Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.”).
Also in light of this fact that he has already served a term beyond what the statute allows, it is not necessary for us to arrive at a sentence for Mr. Bryant. Certainly, I recognize the remedy under § 2241 encompasses more than immediate release — see 28 U.S.C. § 2243 (authorizing federal courts in habeas proceedings to “dispose of the matter as law and justice require”); Wilkinson v. Dotson, 544 U.S. 74, 85-86, 125 S.Ct. 1242, 1250, 161 L.Ed.2d 253 (2005) (Scalia, J., concurring) (recognizing that § 2243’s “dispose of the matter as law and justice require” language has been interpreted “to permit relief short of release” (collecting cases)). But the only remedy now appropriate for Mr. Bryant is his immediate release. Given the statute capping Mr. Bryant’s sentence at ten years, and that he has now served close to twelve years, there would be nothing for a District Court to do at a resentencing.[5] ' Mr. Bryant is due for im *1294 mediate release from the custody of the Bureau of Prisons.
b. Ruling Out The Possibility Of A Re-sentencing In Other Cases Is Inconsistent With The Text Of The Statute, Historical And Current Usage, And Equitable Nature Of The Writ.
Having agreed with the Majority that a resentencing is not necessary for Mr. Bryant, I disagree with its suggestion in dicta that resentencing may never be necessary: [6]
There is no need for the § 2241 court or the sentencing court to hold, a resentenc-ing hearing or to further determine the appropriate sentencing range within the statutory maximum penalty. After all, any § 2241 challenge to a sentence that is already below the authorized statutory maximum could not open the § 2255(e) portal. See Gilbert II, 640 F.3d at 1323. And, Bryant in a § 2241 petition is not able to attack any misapplication of the guidelines below the statutory maximum. See id. Thus, allowing Bryant’s above-statutory-maximum claim to proceed in a § 2241 petition through § 2255(e)’s savings clause and allowing the § 2241 court to reduce Bryant’s sentence to the statutory maximum penalty does not undermine the collateral-relief structure built by Congress in § 2255.
Maj. Op. at 1288 (footnote omitted). There is simply nothing in the statute, our precedent, or that of the United States Supreme Court, which would systematically limit relief in all of these cases to a sentence of ten years — that is, the maximum permitted by the statute.
Further, principles of judicial restraint counsel against our pronouncing a broad categorical rule that may preclude this Court and future District Courts from ordering any remedy other than reducing a petitioner’s sentence to the very most time the statute permits. Indeed a display of judicial restraint is especially appropriate here, given that we have not had the benefit of adversarial briefing on the issue of the proper remedy.[7]
*1295 In any event, the Majority’s unjustifiably limited view of the remedy available under § 2241 is not consistent with the text of the statute, historical and current usage, or the equitable nature of the writ: The Majority’s analysis fails to recognize that § 2255 was enacted to provide a remedy in the sentencing court exactly equal to the remedy available under § 2241. See Hill v. United States, 368 U.S. 424, 427, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962) (“[Section] 2255 was ... intended simply to provide in the sentencing court a remedy exactly commensurate with that which had previously been available by habeas corpus in the court of the district where the prisoner was confined.” (emphasis added)); see also Davis v. United States, 417 U.S. 333, 343, 94 S.Ct. 2298, 2304, 41 L.Ed.2d 109 (1974) (stating § 2255 provides a remedy “identical in scope to federal habeas corpus”).
i. Text of the Statute: 28 U.S.C. § 2243
Federal courts have long enjoyed the power and the duty to “dispose of [habeas corpus petitions] ... as law and justice require.” 28 U.S.C. § 2243. Indeed, “[s]ince 1874, the habeas corpus statute has directed the courts to determine the facts and dispose of the case summarily, ‘as law and justice require.’ ” Peyton v. Rowe, 391 U.S. 54, 66-67, 88 S.Ct. 1549; 1556, 20 L.Ed.2d 426 (1968) (quoting Rev. Stat. § 761 (1874), superseded by '28 U.S.C. § 2243). The “law and justice” requirement has historically been interpreted to confer broad remedial powers on the federal courts: “[t]he court is invested with the largest power to control and direct the form of judgment to be entered in cases brought up before it on habeas corpus.” In re Bonner, 151 U.S. 242, 261, 14 S.Ct. 323, 327, 38 L.Ed. 149 (1894). “[Section] 2243’s delineation of the scope of permissible relief applies to all federal ha-beas proceedings, whether the petitioner is in federal or state custody, see § 2241(c).” Wilkinson, 544 U.S. at 87, 125 S.Ct. at 1251 (Scalia, J., concurring).
ii. Historical and Current Usage
For me, it is important to put Mr. Bryant’s case into the proper historical context. While Justice Scalia has noted the broad relief now available to habeas petitioners, this was, of course, not always the case. “For much of our history, we interpreted [the habeas statute] ... to reflect the common-law principle that a prisoner seeking a writ of habeas corpus could challenge only the jurisdiction of the court that had rendered the judgment under which he was in custody.” Wright v. West, 505 U.S. 277, 285, 112 S.Ct. 2482, 2486, 120 L.Ed.2d 225 (1992). But gradually the category of claims considered to bestow jurisdiction in support of habeas relief grew. Id. For example, as relevant to the pure Begay error we consider here, the Supreme Court in 1873 held that imposition of a sentence above that áuthorized by statute was recognized as a jurisdictional defect that could be remedied by federal *1296 habeas. See Ex parte Lange, 85 U.S. (18 Wall.) at 176.
And just as the category of cognizable habeas claims was once very narrow, so too were the remedies. Again, it is Justice Scalia who explained:
At the time of [42 U.S.C.] § 1983’s adoption, the federal habeas statute mirrored the common-law writ of habeas corpus, in that it authorized a single form of relief: the prisoner’s immediate release from custody. See Act of Feb. 5, 1867, § 1, 14 Stat. 386. Congress shortly thereafter amended the statute, authorizing federal habeas courts to ‘dispose of the party as law and justice require,’ Rev. Stat. § 761. The statute reads virtually the same today, 28 U.S.C. § 2243 (‘dispose of the matter as law and justice require’). We have interpreted this broader remedial language to permit relief short of release.
Wilkinson, 544 U.S. at 85, 125 S.Ct. at 1250. Habeas relief was originally confined to orders requiring the petitioner’s unconditional release from custody. See, e.g., Ex Parte Frederick, 149 U.S. 70, 77-78, 13 S.Ct. 793, 795-96, 37 L.Ed. 653 (1893); In re Medley, 134 U.S. 160, 173, 10 S.Ct. 384, 388, 33 L.Ed. 835 (1890). If the legal error proved by the petitioner did not render her current custody illegal, she had no remedy. See, e.g., McNally v. Hill, 293 U.S. 131, 138, 55 S.Ct. 24, 27, 79 L.Ed. 238 (1934), overruled by Peyton, 391 U.S. at 67, 88 S.Ct. at 1556. Conversely, if the error complained of showed the petitioner’s custody was illegal, courts assumed that they lacked the ability to order a retrial and had no choice but to order the prisoner released unconditionally, often without prejudice to retrial. See, e.g., Ex parte Frederich, 149 U.S. at 77-78, 13 S.Ct. at 795-96; In re Medley, 134 U.S. at 173, 10 S.Ct. at 388. But the habeas remedy evolved over time. It now accommodates more flexible remedies. For example, a habeas court may issue a conditional release order, which only requires release of the prisoner if a retrial, resentencing, or other action sufficient to cure the violation does not occur within an allotted period of time. See Hilton v. Braunskill, 481 U.S. 770, 775, 107 S.Ct. 2113, 2118, 95 L.Ed.2d 724 (1987) (“Federal habeas corpus practice, as reflected by the decisions of this Court, indicates that a court has broad discretion in conditioning ■ a judgment granting habeas relief.”).
Federal courts now recognize the broad use of the writ — for remedies beyond just unconditionally or conditionally terminating physical custody. As the Supreme Court has told us: “[The Writ] is not now and never has been a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose — the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty.” Jones v. Cunningkam, 371 U.S. 236, 243, 83 S.Ct. 373, 377, 9 L.Ed.2d 285 (1963).
So while modern federal habeas corpus practice has moved towards full realization of the statute’s “law and justice” command by recognizing a wide variety of appropriate remedial orders,[8] Part XII of the Ma *1297 jority opinion would deprive this Court of all power and flexibility to fashion any remedy other than to reduce a petitioner’s sentence to the maximum term of imprisonment permitted by statute (i.e., ten years) for pure Begay error. The Majority’s pinched view of our habeas powers and duties is simply contrary to the broad remedial interpretation that has been given to the “law and justice” command in § 2243. The text of the habeas “statute does not deny the federal courts power to fashion appropriate relief.” Peyton, 391 U.S. at 66, 88 S.Ct. at 1556.
•iii. Equitable Nature of the Writ
Also, to the extent that the Majority implies that the remedy for a pure Begay error is limited to reducing a petitioner’s sentence to the statutory maximum, it either does not consider or unreasonably discounts the equitable nature of the writ. The writ of habeas corpus is an equitable remedy. See Gomez v. U.S. Dist. Court for N. Dist. of Cal., 503 U.S. 653, 653-54, 112 S.Ct. 1652, 1653, 118 L.Ed.2d 293 (1992) (per curiam) (‘Whether [a] claim is framed as a habeas petition or as a [42 U.S.C.] § 1983 action, [what is sought is] an equitable remedy”; as a result, equity must be “take[n] into consideration”); Duckworth v. Eagan, 492 U.S. 195, 213, 109 S.Ct. 2875, 2886, 106 L.Ed.2d 166 (1989) (O’Connor, J., concurring) (“[T]he Court has long recognized that habeas corpus [is] ... governed by equitable principles .... ” (quotation marks omitted)); Fay v. Noia, 372 U.S. 391, 438, 83 S.Ct. 822, 848, 9 L.Ed.2d 837 (1963) (“[H]abeas corpus has traditionally been regarded as governed by equitable principles.”), overruled in part on other grounds by Wainwright v. Sykes, 433 U.S. 72, 87-90, 97 S.Ct. 2497, 2507-08, 53 L.Ed.2d 594 (1977). The Supreme Court “repeatedly has recognized that principles of fundamental fairness underlie the writ of habeas corpus.” Sawyer v. Whitley, 505 U.S. 333, 351, 112 S.Ct. 2514, 2525, 120 L.Ed.2d 269 (1992) (Blackmum, J., concurring); Sanders v. United States, 373 U.S. 1, 17, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1963).
This being the case, traditional principles of equity require us to consider the individual facts and circumstances of a petitioner’s case and then fashion the remedy that is proper for him. See Dasher, 574 F.3d at 1318 (reducing a habeas petitioner’s sentence to time served based on counsel’s inadequate legal advice to plead guilty without a plea agreement); id. (recognizing that a court’s “discretion to formulate such a remedy, without disturbing the judgment of conviction, derives from 28 U.S.C. § 2243”).[9]
Mr. Mackey’s case illustrates how important it is for us to leave future courts free to fashion the appropriate remedy in the savings clause cases yet to come. In September 2003, Mr. Mackey was indicted in the Southern District of Florida on a single count of being a felon in possession of firearms arid ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). He pleaded guilty] The presentence investi *1298 gation report (PSR) set forth that he was subject to an enhanced sentence based on the following three prior convictions:
1. Robbery
2. Carrying a concealed firearm
3. Carrying a concealed firearm
Mr. Mackey was sentenced to serve 180-months imprisonment plus four years of supervised release. His guideline range at the time he was sentenced was 180-188 months with the ACCA enhancement. Without the ACCA enhancement, which we now know was wrongly imposed, Mr. Mackey’s total offense level was 18, criminal history category II, yielding a guideline range of 30-37 months. Because Mr. Mackey has already served at least 10 years of imprisonment towards his ACCA sentence, we cannot now put him in a position to receive the sentence he should have received the first time around. Were it otherwise, I would argue that he should be resentenced without the ACCA enhancement. We do not administer justice by stopping every defendant whose sentence was so obviously tainted by an illegal ACCA enhancement from being resen-tenced simply because of our own mistake in defining the term “violent felony” under the ACCA.
iv. Reliance on Gilbert
As support for the conclusion that “[tjhere is no need for the § 2241 court or the sentencing court to hold a resentencing hearing or to further determine the appropriate sentencing range within the statutory maximum,” the Majority opinion reasons, “[a]fter all, any § 2241 challenge to a sentence that is already below the authorized statutory maximum could not open the § 2255(e) portal.” Maj. Op. at 1288 (citing Gilbert, 640 F.3d at 1323). The Majority’s reliance on Gilbert misses the mark in several ways.
First, any attempt to tether a limitation of the remedy available under § 2241 to the holding or rationale of Gilbert fails on its own terms. Gilbert denied savings clause relief to Mr. Gilbert because he only claimed that his guidelines were misapplied. In contrast, Mr. Bryant’s pure Begay error claim is not based on a mistake about the guidelines. As is well established by now, his claim instead arises from the fact that his sentence exceeds the maximum term of incarceration authorized by Congress. This court’s ruling in Gilbert explicitly declined to rule on whether savings clause relief was available for pure Begay error. Id. at 1319 n.20. It cannot properly be said, therefore, that Gilbert even considered — much less decided — anything at all about the scope, limit, or propriety of a particular remedy for errors, like pure Begay errors, that are cognizable under § 2241.
Second, once it is established that the remedy under § 2255 is “inadequate and ineffective” under § 2255(e) for pure Be-gay errors, it follows that the portal to § 2241 is open for those errors. “In a case where the Section 2255 procedure is shown to be ‘inadequate or ineffective’, ... the habeas corpus remedy shall remain open to afford the necessary hearing.” United States v. Hayman, 342 U.S. 205, 223, 72 S.Ct. 263, 274, 96 L.Ed. 232 (1952). Once the § 2241 portal is open, therefore, the statute seems to me to require us to look at the facts and circumstances of each individual case and “dispose of the matter as law and justice require.” 28 U.S.C. § 2243.
Third, the potential administrative problems of resentencing some petitioners under § 2241 should not foreclose the possibility of resentencing others in an appropriate case. The statute offers no workload protection for federal courts. To the contrary, our authority to grant the writ of habeas corpus extends to prisoners who are in custody within our juris *1299 diction at the time the habeas petition is filed. See 28 U.S.C. § 2241(a). In the same way, “[district courts are limited to granting habeas relief ‘within their respective jurisdictions.’ ” Rumsfeld v. Padilla, 542 U.S. 426, 442, 124 S.Ct. 2711, 2722, 159 L.Ed.2d 513 (2004) (quoting 28 U.S.C. § 2241(a)). Again, the reason § 2255 was enacted in 1948 was “to minimize the difficulties encountered in habeas corpus hearings by affording the same rights in another and more convenient forum.” Hayman, 342 U.S. at 219, 72 S.Ct. at 272 (1952) (emphasis added); Wofford v. Scott, 177 F.3d 1236, 1238-39 (11th Cir.1999), implied overruling recognized by Turner v. Warden Coleman FCI (Medium), 709 F.3d 1328, 1333 (11th Cir.2013). In Hayman, the Supreme Court pointed to Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830 (1941) as an example of the “practical problem presented when an application for habeas corpus alleges a meritorious claim not controverted by the records of the trial court.” 342 U.S. at 213, 72 S.Ct. at 269.
Without getting too far into the weeds on Walker, the resolution of that habeas petition required holding an evidentiary hearing in the Northern District of California even though the events complained of by the petitioner happened in Texas and that is where the federal officers who were witnesses were located. See Walker, 312 U.S. at 278-82, 286-87, 61 S.Ct. at 576-77, 579; see also Hayman, 342 U.S. at 213, 72 S.Ct. at 269. Thus, while Walker offers a good demonstration of the inconveniences that § 2255 was enacted to avoid, it also teaches that it is possible to resolve even geographically dispersed (or otherwise complicated) factual claims in the habeas court under § 2241 when necessary.
The same should be true today — notwithstanding the enactment of § 2255— where we determine that § 2255 is inadequate or ineffective. After all, our Court recognized in Wofford itself that “[tjhere was no intent to make the § 2255 remedy any different in scope from the habeas remedy that had previously been available to them.” 177 F.3d at 1239; see also Davis, 417 U.S. at 344, 94 S.Ct. at 2304 (“Nowhere in the history of Section 2255 do we find any purpose to impinge upon prisoners’ rights of collateral attack upon their convictions. On the contrary, the sole purpose was to minimize the difficulties encountered in habeas corpus hearings by affording the same rights in another and more convenient forum.” (quotation marks omitted)).
Finally, there is persuasive authority outside the Eleventh Circuit for resentenc-ing defendants under the savings clause, even after the passage of the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2241, et seq. For example, in United States v. Triestman, then Circuit Judge Sotomayor held that a District Court had the power to resentence a habeas petitioner on his drug convictions after he successfully challenged his firearm conviction in a § 2241 proceeding on the basis of Bailey v. United States, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). 178 F.3d 624, 628-30 (2d Cir.1999); cf. Brown v. Caraway, 719 F.3d 583, 596 (7th Cir.2013) (granting § 2241 relief to a petitioner erroneously sentenced as a career offender for pure Begay type error pre-Booker, and remanding “with instructions to' reduce [defendant’s] sentence to reflect [the Court’s] finding that he is not a career offender within the meaning of [USSG] § 4B1.1”).
Mr. Triestman’s § 924(c) conviction was vacated in a § 2241 proceeding pursuant to Bailey. The District Court then recalculated Mr. Triestman’s guidelines in such a way that increased his guideline range. Triestman, 178 F.3d at 628. Mr. Triest-man was resentenced on his unchallenged *1300 drug convictions to a term of imprisonment longer that what he had received before getting habeas relief. The sentencing court reasoned that “the Court’s power to fashion appropriate relief is no narrower under § 2241 than it is under § 2255 and that federal courts have broad discretion under the original habeas corpus statute to fashion appropriate relief as- law and justice require.” Id at 627 (quotation marks omitted).. The Second Circuit agreed, stating: “We also see no reason to view a court’s remedial powers more narrowly in a § 2241 motion than in a § 2255 motion.” Id at 630. Indeed, (now) Justice Sotoma-yor’s opinion also indicated the § 2241 court could rely on the habeas petitioner’s original PSR in resentencing him. Id at 632-34. Triestman provides more than just a persuasive example that resentenc-ing is an available remedy under § 2241. It also demonstrates that sometimes it is necessary and appropriate to recalculate a defendant’s sentencing guidelines in a § 2241 proceeding to achieve the purposes of sentencing mandated by Congress in 18 U.S.C. § 3553(a).
2. THE TIME FOR MEASURING FORECLOSURE ’
My second concern about the Majority’s opinion is the announcement of a five-part test for determining the availability of savings clause relief:
To show his prior § 2255 motion was “inadequate or ineffective, to test the legality of his detention,” Bryant must establish that (1) throughout his sentencing, direct appeal, and first § 2255 proceeding, our Circuit’s binding precedent had specifically addressed Bryant’s distinct prior state conviction that triggered § 924(e) and had squarely foreclosed Bryant’s § 924(e) claim that he was erroneously sentenced above the 10-year statutory maximum penalty in § 924(a); (2) subsequent to his first § 2255 proceeding, the Supreme Court’s decision in Begay, as extended by this Court to Bryant’s distinct prior conviction, overturned our circuit precedent that had squarely foreclosed Bryant’s § 924(e) claim; (3) the new rule announced in Begay applies retroactively on collateral review; (4) as a result of Begay’s new rule being retroactive, Bryant’s current sentence exceeds the 10-year statutory maximum authorized by Congress in § 924(a); and (5) the savings clause in § 2255(e) reaches his pure § 924(e)-Begay error claim of illegal detention above the statutory maximum penalty in § 924(a).
Maj. Op. at 1274. Of course I am aware that in Williams v. Warden, Fed. Bureau of Prisons this Court established that in order for a habeas petitioner to get relief under the savings clause, she must establish that relief was foreclosed to her, by binding circuit precedent, not only at the time of the first § 2255 motion, but also at the time of the trial and the time of the direct appeal. 713 F.3d 1332, 1349-50 (11th Cir.2013). As I have said before, I read nothing in thé statute which requires this. See Williams, 713 F.3d at 1350-56 (Martin, J., dissenting). I adhere to my dissenting views on this subject in Williams. Id.
The savings clause simply provides that a § 2241 petition “shall not be entertained if it appears that the applicant has failed to apply for relief ... to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by [§ 2255] motion is inadequate or ineffective to test the legality of his detention.” 28 U.S.C. § 2255(e). Nowhere in this savings clause provision did Congress mention that in order to get relief now, a petitioner had to have been foreclosed from getting relief the time of trial, and sentencing, and his direct appeal. The statute only refers to the relevant time period as the denial of the *1301 § 2255 motion (if one was filed) and the present. Based on my reading, therefore, the relevant point for measuring circuit foreclosure is at the time the first § 2255 motion was adjudicated, not , the time of sentencing or direct appeal.[10]
Once again, one of our three consolidated cases (McKinney v. FCC Coleman, No. 12-12953), demonstrates the denial of justice that can result from requiring foreclosure of the habeas claim at the time of trial and direct appeal. Circuit precedent did not foreclose the argument that a prior offense of carrying a concealed firearm was not a “violent felony” at the time of Mr. McKinney’s trial and direct appeal. He raised the issue at his trial and in his direct appeal. In fact, it was his case (specifically that of his co-defendant) that established the circuit precedent that foreclosed him from raising the issue at the time of his first § 2255 motion. See United States v. Hall, 77 F.3d 398, 401-02 (11th Cir.1996) (holding that carrying a concealed weapon in violation of Florida law constituted a “violent felony” under the ACCA), abrogation recognized by Williams, 713 F.3d at 1346.
And our Court will now likely deny relief to Mr. McKinney because the relief he seeks was not foreclosed to him at the time of his trial and direct appeal. And if we do this, we will do, so in spite of the fact that the government has not argued that this should preclude Mr. McKinney from savings clause relief. Indeed quite to the contrary, the government’s position is that Mr. McKinney is entitled to savings clause relief. Surely equity requires relief for Mr. McKinney when he: preserved his ACCA argument at trial; pursued it on direct appeal; and we wrongly decided the issue against him, thereby mistakenly establishing the circuit precedent that carrying a concealed firearm is a violent felony under the ACCA. The Majority Rule would deny him relief because he was the first to raise the issue. The proper inquiry under the savings clause should be the one- intended by Congress: whether the “remedy by [§ 2255] motion is inadequate or ineffective to test the legality of his detention.” 28 U.S.C. § 2255(e). We ignore the mandate of the statute when we also require that the direct appeal be ineffective or inadequate.
3. WHO DECIDES WHEN CIRCUIT • PRECEDENT IS BUSTED
My final concern relates to the Majority’s apparent endorsement of the view that, “[u]nder Williams’s analysis, circuit precedent would still ‘squarely foreclose’ any Begay-based sentencing claim unless and until Begay’s holding was extended to a discrete situation involving a specific pri- or state conviction.” Maj. Op. at 1275. While I agree that Begay did not abrogate “all of this Court’s pre-Begay violent felony jurisprudence,” Maj. Op. at 1275'(quot-ing Williams, 713 F.3d at 1347), I do not agree that savings clause relief is only available after this Court recognizes that Begay, or any other retroactively applicable Supreme Court decision, has busted circuit precedent.
Certainly, explicit recognition by this Court that a Supreme Court decision abrogated a prior precedent would be sufficient. See, e.g., Archer, 531 F.3d at 1352 (holding that Begay “is clearly on point *1302 and has undermined Gilbert to the point of abrogation”). But express abrogation by us may not always be necessary. To the extent the Majority opinion implies otherwise, it suggests that District Courts are not required to apply controlling Supreme Court precedent unless and until this Court first recognizes that the Supreme Court has abrogated our own prior precedent. However, “[a] circuit court’s decision binds the district courts sitting within its jurisdiction while a decision by the Supreme Court binds all circuit and district courts.” McGinley v. Houston, 361 F.3d 1328, 1331 (11th Cir.2004). When the Supreme Court announces new rules of law, including retroactively applicable cases involving statutory interpretation, District Courts are bound by those decisions, from the date of the Supreme Court’s decision forward.
4. CONCLUSION
For the reasons I have discussed here, I concur with the Majority’s conclusion that § 2241 relief is available to Mr. Bryant because he was sentenced above the statutory maximum. I dissent to those portions of the Majority’s opinion that go beyond what the statute provides in narrowing both the class of prisoners who stand to benefit from savings clause relief for pure Begay errors and the remedy available to them once they get that relief.

. United States v. Archer, 531 F.3d 1347, 1352 (11th Cir.2008) (recognizing that Begay is clearly on point and undermined prior circuit precedent to the point of abrogation such that carrying a concealed weapon cannot be considered a "crime of violence” under the career offender guideline in United States Sentencing Guidelines (USSG) § 4B1.2).

. United States v. Canty, 570 F.3d 1251, 1255 (11th Cir.2009) (applying Archer and Begay to ACCA context and holding "that carrying a concealed weapon is not a violent felony that may be used as a predicate conviction to enhance a defendant's sentence under the ACCA”).

. Mr. Bryant was initially taken into custody by the U.S. Marshal Service on December 22, 2000, detained, and then released on bond on December 27, 2000.

. Even setting aside the issue of his term of incarceration, there is nothing else, such as an unauthorized term of supervised release, which would require Mr. Bryant to be resen- *1294 tenced. Upon his release, Mr. Bryant will begin serving his three years of supervised release,.see 18 U.S.C. § 3624(e), which is an authorized term of supervised release for a conviction under 18 U.S.C. §§ 922(g) and 924(a). See 18 U.S.C. § 3559(a)(3) (classifying offenses with a statutory maximum term of ten years as a Class C felony); 18 U.S.C. § 3583(b)(2) (authorizing a term of supervised release for a Class C felony of "not more than three years"); USSG § 5D1.2(a)(2). There may be cases in which a petitioner's term of supervised release, like his term of incarceration, exceeds that authorized by Congress, but Mr. Bryant's is not one of them.

. To the extent the Majority suggests that § 2241 relief could never include a resentenc-ing to what the original and .legal sentence should have been, those portions of the Majority’s opinion are dicta, not holding. They simply go beyond the peculiar fact pattern presented by Mr. Bryant's case. See Licciardello v. Lovelady, 544 F.3d 1280, 1288 n.8 (11th Cir.2008) (“Our holding, as always, is limited to the facts before us.”); Chavers v. Sec’y, Fla. Dep't of Corr., 468 F.3d 1273, 1275 (11th Cir.2006) ("The holdings of a prior decision can reach only as far as the facts and circumstances frame the precise issue presented in that case.”).

. Neither have we had the benefit of briefing on the question of what is the proper remedy in the two other consolidated cases involving Messrs. McKinney and Mackey. The Majority has set aside these cases for now, but I fear this opinion dooms both men to a 10-year ■ sentence. To the extent the parties to Messrs. McKinney’s and Mackey’s cases did talk about it, however, their comments support the conclusion that a straightforward resen-tencing without the ACCA enhancement is the appropriate remedy. For example, the government's joint answer brief in McKinney, No. 12-12953, and Williams, No. 12-12841, states: "The judgment should be vacated, and the cases remanded with instructions to grant the petitions for a writ of habeas corpus and direct that McKinney and Williams be resen-tenced by the court of conviction without the ACCA enhancement.” Br. for the Resp. War *1295 dens at 54, McKinney, No. 12-12953, & Williams, 12-12841 (Jan. 11, 2013). In the same way, the government’s joint supplemental brief in McKinney, 12-12953, and Mackey, 12-14727, concludes: "The judgment denying McKinney's and Mackey’s habeas petitions should be reversed and the cases remanded with instructions to grant the writs and direct that the petitioners be resentenced accordingly.” Supplemental Br. for Resp. Warden at 30, Mackey, 12-14727, & McKinney, 12-12953 (Aug. 5, 2013). Also, the joint counseled supplemental brief for Messrs. McKinney and Mackey states: "The judgment should be vacated, and the cases remanded with instructions to grant the petitions, and to dispose of the matter, as law and justice require by directing that petitioners be resen-tenced without the ACCA enhancement.” (Joint) Supplemental Br. for Pet’rs at 38, McKinney, 12-12953, & Mackey, 12-14792 (June 27, 2013); see also (Joint) Rep. Br. for the Pet’rs at 18, McKinney, 12-12953, & Mackey, 12-14792 (Aug. 19, 2013) (same).

. See Wilkinson, 544 U.S. at 85, 125 S.Ct. at 1250 (Scalia, J., concurring) ("We have interpreted this broader remedial language to permit relief short of release.”); Dasher v. Att'y Gen., Fla., 574 F.3d 1310, 1318 (11th Cir.2009) (granting writ and ordering relief of modification: of sentence to "time served”); id. ("Our discretion to formulate such a remedy, without disturbing the judgment of conviction, derives from 28 U.S.C. § 2243, which authorizes federal habeas courts to 'dispose of the matter as law and justice requires.’ ”); see also Boumediene v. Bush, 553 U.S. 723, 779, 128 S.Ct. 2229, 2266, 171 L.Ed.2d 41 (2008) ("[Tjhe habeas court must have the power to order the conditional release of an individual unlawfully detained — though release need not be the exclusive remedy and is not the appropriate one in every case, in which the writ is *1297 granted.”); Nunes v. Mueller, 350 F.3d 1045, 1057 (9th Cir.2003) (“Conceptually, any habe-as remedy should put the defendant back in the position he would have been in if the ... [constitutional] violation never occurred....” (quotation marks omitted)).

. See also Boria v. Keane, 99 F.3d 492, 498-99 (2d Cir.1996) (granting habeas relief and reducing sentence to time served and discharging petitioner from prison because he had already served sentence "at least twice as long as would have been possible” if trial counsel had not been ineffective in persuading the petitioner to accept a plea offer); Williams v. Singletary, 78 F.3d 1510, 1516-17 (11th Cir.1996) (granting habeas relief for unconstitutional imposition of cumulative sentences for single incident of criminal behavior and vacating one sentence and crediting of time already served to the other).

. Of course, whether a defendant preserved his objection at the time of sentencing and direct appeal may be relevant to the non-jurisdictional determination of procedural default. See, e.g., Sawyer v. Holder, 326 F.3d 1363, 1366-67 (11th Cir.2003) (applying the procedural default rule to a § 2241 petition); see also Shukwit v. United States, 973 F.2d 903, 904 (11th Cir.1992) (recognizing that procedural default rule is not jurisdictional, but is an affirmative defense that can be waived).